### A. Lewy et al. v. Charles K. Crawford.

### No. 369.

**Betting on Elections.** — A bet on an election is illegal and void between the parties. When parties have placed the wager in the hands of a stakeholder, either party has a right to recover his money from the stakeholder before the election, or when notice has been given the stakeholder of the disaffirmance before he pays the money to the winner.

Appeal from Bexar. Tried below before Hon. W. W. King.

*Fleming, Camp & Camp* and *J. H. McLeary*, for appellants.— 1. Crawford could not recover of Lewy as a stakeholder, even though he had not paid over the money, because the money placed in Lewy's hands was in pursuance of an illegal contract, a bet on an election. As between the parties to such contract, who are in equal fault, no right exists which a court will enforce. Penal Code, arts. 371–373; Davis v. Sittig, 65 Texas, 500; Ayer v. Duncan, 50 Cal., 327.

2. By the result of the election, the money in the hands of the stakeholder passed to the winner. The contract was executed; and being illegal, a court should refuse to relieve either party. Johnston v. Russell, 37 Cal., 670; Pome. Eq., secs. 930–940; Yates v. Foote, 12 Johns., 1.

*W. W. Herron*, for appellee.—Money wagered and placed in the hands of a stakeholder is not forfeited to him, and may be recovered before it is paid to the winner, and even then if the stakeholder was notified not to pay it over. 7 Wait's Act. and Def., 89; 5 Laws. Rights and Rem.,

sec. 2421; Moore v. Tripp, 20 N. J. Law, 263; Wilkinson v. Tousley, 10 Am. Dec., 139.

FLY, ASSOCIATE JUSTICE.—Appellee, as plaintiff, filed suit in the Justice Court, on account for money had and received amounting to $175, against appellant Lewy, who came in and moved the court to have L. P. Peck, the other appellant, made a party to the suit, which was done.

Judgment was rendered in the Justice Court in favor of appellee for the amount of his claim, and the appellants appealed the case to the District Court, where a like judgment was rendered for appellee.

The facts, in brief, are, that appellant Peck and appellee, Crawford, on the day of the State and National election in 1892, made a wager with each other on the pending election for Governor, each one putting into the hands of appellant Lewy as stakeholder the sum of $170. Appellee on the same day made another bet for $5 on the gubernatorial election, and this money, with that of his competitor, was also put into Lewy's hands as stakeholder; that appellee bet appellant Peck and the other person the $175 that J. S. Hogg would be elected Governor by 10,000 majority, whether over George Clark or the field is left in doubt. A few days after the election appellee notified stakeholder Lewy not to pay his $175 over to Peck, but to give it back to him; that Lewy declined to do this, and had never paid the money over to any one, but still had it.

The terms of the bet, or who was winner or loser, can cut no figure in the decision of this case. The whole transaction was clearly against public policy, and in open violation of one of the penal statutes of Texas. In every State and Government wherever the right of suffrage has been retained by the people, the deleterious and degrading effect of any species of gambling upon the result of a popular election has been recognized and unqualifiedly condemned. More especially is this true in a government like ours, where the stability and efficacy of the government rests upon the purity of the ballot box, and where everything that tends in the slightest to degrade the individual voter, or to taint by bribery or corrupt influences the verdict of the masses of the people, is a blow at popular government.

The very theory of a popular form of government resting on the unpurchased will of the majority is, that the person elected to office is chosen by the free will of a majority of the voters, free to pass upon the qualification of the respective candidates, and free to act uninfluenced by bribes or sinister motives. This may be simply theory, but unless this theoretical conception of popular elections is practically put into operation, so far as the vices, imperfections, and errors of mankind will permit, popular institutions must and will become a failure. The corruption of any one voter is a direct menace to the perpetuity of popular government. Legislators and courts in England and America have at all times frowned

down and denounced by statutes and decisions the staking of any sum upon the result of an election. Whenever it is done, with him who has his money at stake the question becomes one not of the welfare and good of the government, nor one of the fitness of the individual candidates for office, but is a question of gain and "filthy lucre;" and in proportion to the size of the bet, he becomes ready to influence others in improper ways to assist him in his unlawful enterprise. If Chief Justice Kent of New York looked with disfavor on the debauching of elections by gambling on them eighty years ago, when the right of suffrage was restricted and the voting population consisted of a few hundred thousand, scattered over a vast territory, much more may it be reprehended and feared when the right of suffrage is unrestricted and the voting population will exceed twelve millions. But no homily on this subject is necessary, for by the common consensus of civilized humanity the practice of betting on elections is condemned, and in most instances severely punished by statute.

A gaming contract being illegal and void, courts have invariably refused to interfere between the parties to the wager, who, being in pari delicto, can not invoke the aid of the courts in carrying out their contracts. The question, however, presented to this court is not whether it will enforce or affirm a gambling contract, but whether it will permit one of the parties to disaffirm it. We have investigated a large number of American cases, and in nearly all of them the rule is laid down, that as long as the money is in the hands of the stakeholder either party has a right to demand his part of the money, and if refused, can maintain an action at law, whether demand is made on the stakeholder before or after the happening of the contingency upon which the wager is suspended. This is the English rule, and is fortified by age and hallowed by precedent. So far as our own courts are concerned, it is a case of first impression, as neither the direct question nor one similar to it has ever been presented for adjudication in this State. This being true, it may be interesting, if not profitable, to review some of the cases on the subject which have come under our attention, and the number of adjudications elsewhere point to the conclusion that the evil aimed at is widespread and deep seated among the American people.

One of the earliest cases to which we have had access, and one which has been very widely and favorably cited, is the case of Vischer v. Yates, 11 Johnson, 28. The opinion in this case was rendered by Chief Justice Kent, the great commentator on American law; and in a fine review of English decisions, he lays down the broad rule, since followed by most courts, that courts must frown down, in every legitimate manner, any unholy tampering with or corruption of the ballot; that bets on elections are illegal and void, and that courts will lend their aid in disaffirming such contracts, and will hold the stakeholder responsible, when notice is given by a party to a wager that he desires to withdraw his money. This

learned judge struck the keynote that has in most American courts given tone to decisions on the subject. We quote from Chief Justice Kent in the opinion referred to: "The stakeholder ought not to be permitted to hold the money in defiance of both parties. There would be no equity in such a defense; and if the plaintiff can not recover back the deposit in this case, the winner can not recover it; for that would be compelling the execution of an illegal contract as if it were legal, and would at once prostrate the law that declares such contracts illegal. The English rule is the true rule on this subject. On the disaffirmance of the illegal and void contract, and before it had been carried into effect, and while the money remains in the hands of the stakeholder, each party ought to be allowed to withdraw his own deposit. The court will then be dealing equitably with the case. It will be answering the policy, and putting a stop to the contract before it is perfected. * * * The courts have gone quite far enough when they have refused to help either party as against the other, in respect to these illegal contracts."

It is true that this decision was overruled by the "Court for the Correction of Errors," the decision being rendered by a divided court; and no court of any respectability, except perhaps that of California, has ever followed in the noisome wake of the decision of Senator Sanford, the mouthpiece of the New York court. On the other hand, the decision has been time and again repudiated, and the very doctrine held by Judge Kent was afterward approved by the New York Court of Appeals. Story v. Brenan, 15 N. Y. App., 524.

Senator Sanford makes his decision turn on the question of the happening of the contingency concerning which the wager is laid. We quote from his opinion as follows:

"In contracts of hazard, the condition of the parties after the uncertain event has happened is extremely different from their situation before. Before the event has happened, and while it is uncertain who will be the winner or the loser, neither is much injured, and perhaps not at all, by declaring the contract void. The parties are treated alike; neither of them can complain; and if it is necessary for the public good that the contract should not proceed further, the decision is made without any sacrifice of justice between the parties. Not so if the hazard has ceased, and the wager has been lost or won, according to contract. A very different relation between the parties then takes place. If the losing party may vacate his contract after the event has happened and is known, he is allowed to practice fraud upon the adverse party. To allow the loser to retract his contract because he is the loser, would give sanction to the grossest perfidy and injustice. If this party wins, he profits by the contract, and takes the fruit of it; if he loses, he abjures the contract and exonerates himself from its obligation; if he wins, he holds the wager by the laws of honor; if he loses, he refuses payment, or

reclaims the wager if paid, by the laws of the land. According to the result, he avails himself either of the laws of honor or of the laws of the land. While the event is uncertain and unknown, he stands upon the laws of honor. When it has happened, and is against him, he retires to the laws of the land. While he contracts upon the basis of hazard, he incurs no risk. While he is himself wrapped in impenetrable armor, he contends with a naked adversary. When he talks of contingency and hazard, he means certainty. When he promises he deceives; and while he pledges his faith, he betrays. It is only the loser who repents. However bitter and sincere his repentance may be, it is not that he has offended against public policy, but that he has lost his money. To prove the sincerity of his repentance, and as an atonement of his sin against public policy, he proposes to cheat his adversary, and take back his own money after it has been lost.''

We are unable to see the cogency of this rule. It is not the business of courts to determine at what point in the proceeding a man must repent, for repentance has nothing to do with the solution of the question. Doubtless repentance after losing a bet is like unto that which follows a drunken debauch—short-lived, and the offspring of a disordered liver or depleted pocket. But the Senator never apprehended the great truth put by Judge Kent, that it was not a question of sorrow or repentance, but one of disaffirming and destroying a contract made in violation of law and morals. Neither does his rule work harm to any one, but it leaves the parties exactly where they were when the violation of the law was initiated, and no one, in law or morals, has been defrauded of anything.

In Ball v. Gilbert, 12 Metcalf, 397, the case of Vischer v. Yates is approved, and the following language is employed: '' We think the money deposited by each party was a simple, naked deposit, respecting which the agreement to pay it over to one, according to the result of the pending presidential election, and not executed by actual payment, was wholly inoperative and void; and then by implication of law, the money was so deposited to the use of the depositors respectively; and that an action for money had and received would lie for each party for the amount so deposited by him.''

In the case of Stacey v. Foss, 19 Maine, 335, it is held: '' When money is once paid over to the winner, it can not be recovered from stakeholder or winner. But when the money has not been paid over by the stakeholder, although it has been lost by the happening of the event, upon notice and demand the stakeholder is liable to the loser for the amount by him deposited.'' This opinion sustains the opinion of Vischer v. Yates, delivered by the New York Supreme Court, and condemns the opinion of Senator Sanford; and says: '' It best comports with public policy to arrest the illegal proceeding before it is consummated, and, in

our judgment, the opinion of the Supreme Court is better sustained, upon principle and authority, than that of the Court of Errors."

In a South Carolina case (Bledsoe v. Thompson, 57 American Decisions, 777), the same doctrine is enunciated.

In Tennessee it was held, that if the stakeholder paid over the money without notice and demand by the loser, he would not be responsible, but otherwise if the notice was given.

In McAllister v. Hoffman, a Pennsylvania case (16 American Decisions, 556), in a case of betting on an election, it was held, that money paid over to the winner after notice is recoverable, and the case of Vischer v. Yates is cited and approved.

In the case of Shackelford v. Ward, 3 Alabama, 37 (36 American Decisions, 435), it was said: "Notice to stakeholder to hold money arrests it, and he may not afterwards pay over the money to either, whatever the determination of the event upon which depends the wager."

In Jeffrey v. Ficklin, 3 Arkansas, 22 (36 American Decisions, 456), it is said: "The rule is, that if the contract be executed, and both parties in pari delicto, neither of them can recover from the other the moneys so paid; but if the contract continues, and the party is desirous of rescinding it, he may do so, and recover back the deposit. And this distinction is made, that where the action is an affirmance of an illegal contract, for the performance of an engagement malum in se, it can in no case be maintained; but where the action is in disaffirmance of such a contract, and instead of endeavoring to enforce it, presumes it to be void, and seeks to prevent the defendant from retaining the benefit which is derived from an unlawful act, then it is consonant with the spirit and policy of the law that he should recover."

In Alford v. Burke, 21 Georgia, 46, the court says: "It may be considered now as well established law, that a party to an illegal or immoral or criminal contract may recover back from a stakeholder a deposit in his hands." The case of Vischer v. Yates is approvingly cited.

In Reynolds v. McKinney, 4 Kansas, 94, it is said: "Betting on elections is utterly prohibited by the laws of this State. It follows that all money placed in the hands of stakeholders is to be regarded as placed or deposited in their hands without consideration, to be repaid on demand to the person who deposited the same, or attached by any person having a valid claim, and showing cause of attachment against the depositor."

In Hardy v. Hunt, 11 California, 343, after citing and approving Vischer v. Yates, it is held: "There can be no doubt that the wager was illegal and void as against public policy, the direct effect of such wagers being to affect the purity of elections. This has been often, indeed, we believe universally, held whenever the question has arisen. If this suit had been to recover a wager of this sort, the action could not be maintained. But this is not the question. The party depositing the money for this illegal

purpose may retract the illegal act. The money is not forfeited for the benefit of the stakeholder." It would seem this opinion was afterwards qualified by the Supreme Court of California. There are many other cases on this same subject, but we have quoted sufficient to show the general trend of the American decisions.

We hold that the wager made between appellee, Crawford, and appellant Peck was illegal and ab initio null and void, and the stakeholder occupies the same position towards them that he would have done had they voluntarily left their money in his hands without any stipulations; and being a bailee, he is responsible to each of the depositors for the amount of his deposit. We are not assisting in executing an illegal contract; we ignore it; we treat it as though it did not and could not exist. Our decision will not recognize the existence of the contract, but says there was no contract. We can not permit a stakeholder to defend successfully against a man who wishes to annul an illegal contract, and is seeking to recover his deposit, and who would defeat his claim by setting up as a defense the illegal and void contract. He has no equity against the appellee, whose money he is holding. He can not set himself up to decide that a party can not retire from a contract which the courts would not enforce. Appellee does not rely on the illegal contract to establish his right to the money, but he says that appellant Lewy has his money on deposit, and he wants it. He gave notice in time to stop it in the hands of the bailee; he seeks to regain it, and he is entitled to it.

It is the policy of courts, as hereinbefore indicated, to pursue that course that will discountenance gambling on elections, and have a tendency to check it; and when it is known that the loser can at any time before the money is paid over reclaim it from the stakeholder, it will have a discouraging effect on those who have the desire to stake their money on the result of popular elections.

We are of the opinion that there was no error in the judgment of the lower court, and it is affirmed.

*Affirmed.*

Delivered November 22, 1893.