## ALTGELT v. GERBIC.†

(Court of Civil Appeals of Texas. San Antonio. May 29, 1912. Rehearing Denied June 26, 1912.)

**1. CANCELLATION OF INSTRUMENTS (§ 37*)— PETITION—SUFFICIENCY.**

In an action to rescind a lease on the ground that the premises were leased for use as a meat market and that the parties were mutually ignorant of the existence of a city ordinance forbidding meat markets in that part of the city, a petition, which shows that the lessee had no other occupation, and that the lessor would not permit him to sublease the premises, is not demurrable because it does not allege that the lessee was ready and willing to perform the contract.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 66–80; Dec. Dig. § 37.*]

**2. LANDLORD AND TENANT (§ 28*)—RESCISSION—GROUNDS.**

That a lessor, who was the attorney for the lessee, knew that the leased premises were to be used as a meat market, and represented to the lessee that such occupation could be carried on there, when in fact it was forbidden by city ordinance, is a ground for rescission, although the lessee agreed in the lease to use the premises for legitimate purposes only.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 82–84; Dec. Dig. § 28.*]

**3. MUNICIPAL CORPORATIONS (§ 122*)—ORDINANCES—PLEADING.**

An allegation that a city ordinance was a valid ordinance legally passed and adopted was sufficient, without alleging the details of its adoption necessary to make it a valid ordinance.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 281–289; Dec. Dig. § 122.*]

**4. LANDLORD AND TENANT (§ 29*)—LEASE— EFFECT OF ILLEGALITY—DENIAL OF RELIEF.**

Where a lessor, who was the attorney for the lessee, knew the use to which the lessee intended to put the premises and told him that he would protect him if anybody bothered him, and the lessee relied on the lessor's superior knowledge of the law, and did not know that such use of the premises would be illegal until he was arrested for violating a city ordinance, the violation of the ordinance is not available to the lessor as a defense to an action for rescission, since even if the contract is illegal, and both parties equally guilty, equity will grant a rescission, although it would not grant any relief in affirmance of the contract.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 85; Dec. Dig. § 29.*]

**5. MUNICIPAL CORPORATIONS (§ 720*)—ORDINANCES—VALIDITY.**

Under a provision of a city charter authorizing the city council to erect and maintain market houses and regulate everything relating to butchers, an ordinance prohibiting the establishment of meat markets within six blocks of the city market house is valid.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1536–1541; Dec. Dig. § 720.*]

**6. EVIDENCE (§ 413*)—PAROL EVIDENCE TO VARY WRITING.**

Testimony that a lessor advised the lessee that the use to which he intended to put the premises was a legitimate business, and that he would protect him from any one disturbing him, was not incompetent as varying the terms of the lease by which the lessee agreed not to engage in any illegitimate business.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1855–1857, 1859, 1860; Dec. Dig. § 413.*]

**7. MUNICIPAL CORPORATIONS (§ 720*)—ORDINANCES—CONSTRUCTION.**

Where a city ordinance prohibits the establishment of a meat market within six blocks of the city market house, another ordinance authorizing the council to grant the right of establishing, in any designated locality of a city, stalls for the vending of meat, must be construed as embracing all of the city except that portion to which the first ordinance applies.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1536–1541; Dec. Dig. § 720.*]

**8. LICENSES (§ 22*)—PROCEEDINGS TO PROCURE.**

An application for a permit to establish a meat market addressed to a city council is properly filed with the city clerk.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. §§ 57–59; Dec. Dig. § 22.*]

**9. TRIAL (§ 260*) — INSTRUCTIONS — MATTER COVERED BY OTHER INSTRUCTIONS.**

Refusal to give an instruction requested by defendant is not error, where another instruction covering the same matter was given in the language requested by defendant.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

**10. LANDLORD AND TENANT (§ 34*)—LEASE— RESCISSION—CONDITIONS PRECEDENT.**

The rescission of a lease of premises for use as a meat market, on the ground that a city ordinance prohibited the establishment of meat markets at that place, is not defeated by the lessee's failure to apply for a permit, where the evidence showed that permits for meat markets in that part of the city were never granted.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 97; Dec. Dig. § 34.*]

**11. CONTRACTS (§ 93*)—RIGHT TO CANCELLATION—MISTAKE.**

Where a party to a contract was unintentionally misled to his disadvantage by the other party, in whom he reposed confidence, equity will set aside the contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 415–419; Dec. Dig. § 93.*]

**12. CONTRACTS (§ 93*)—RESCISSION—MISTAKE.**

Although equity will not usually relieve against a contract for mistake of law, mistakes of persons as to their own private rights and liabilities may be regarded as mistakes of fact, and, when brought about by some one possessed of superior knowledge or in whom trust was reposed, equity will intervene.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 415–419; Dec. Dig. § 93.*]

**13. CONTRACTS (§ 93*)—VALIDITY—MISTAKE.**

Where one of the parties to a contract was an attorney on whose legal knowledge the other party relied, a relation of trust and confidence was shown justifying relief against a mistake of law, although no close relation between the parties, matured by many transactions, was shown.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 415–419; Dec. Dig. § 93.*]

Appeal from District Court, Bexar County; J. L. Camp, Judge.

Action by M. Gerbic against George C. Altgelt. From a judgment for plaintiff, defendant appeals. Affirmed.

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes
† Writ of error denied by Supreme Court.

Perry J. Lewis and H. C. Carter, both of San Antonio, for appellant. O. M. Fitzhugh and M. Coppard, both of San Antonio, for appellee.

FLY, J. Appellee instituted this suit, alleging that he is a dealer in meats and other articles commonly sold in meat markets, that being his sole occupation; that appellant, who is an attorney at law in San Antonio, owned a certain house in said city "known as house No. 113 on the west side of North Flores street"; that on or about November 30, 1910, appellee, in order to obtain the use of said house for a meat market, entered into a written lease contract with appellant for said house for two years, which is set out in the petition, and gave appellant a deed of trust on lot 4, block 5, new city block 1907, to secure appellant for the rent of his house. Appellee alleged that, before executing the instruments aforesaid, he sought the professional counsel of appellant as to his legal right to operate a meat market, including the handling and selling of all kinds of fresh meats on the rented premises, and as to whether it would be lawful for appellee to conduct such business, informing appellant that appellee would not lease the premises unless he could use it as a meat market, and appellant "advised plaintiff that there was no law or city ordinance forbidding the use of aforesaid premises for the purposes mentioned, and therefore there could be no legal interference with plaintiff on account of his operating a meat market therein; that plaintiff then told defendant that "he (plaintiff) could not very well understand or read the English language and was not familiar with the laws of the city of San Antonio and state of Texas, and that he would trust defendant and rely upon defendant to protect him on all legal points involved in the making of the aforesaid lease contract." It was further alleged that appellee relied on the advice of appellant and was thereby induced to enter into the contract; "that immediately following the execution of the aforesaid contract plaintiff equipped said building as a meat market and began the operation of said business therein; that thereupon plaintiff was arrested by the legally constituted authorities of the city of San Antonio as a violator of an ordinance of said city, which forbids the operation of a meat market within six blocks of the city market house within said city"; that appellee was forbidden to pursue said occupation, under a penalty of a daily fine of from $10 to $100; that he could not' use the premises for any other purpose and sought from appellant the authority to sublease the house, which was denied him; that he then tendered the possession of the premises to appellant and asked for a release from the contract and deed of trust, but, while appel-

lant accepted possession of the premises, he refused to release the deed of trust and rescind the lease contract. Appellee alleged that there was a mutual mistake as to the existence of the ordinance, which deprived appellee of the use of the premises. Appellee sought the rescission of the contract and the cancellation of the deed of trust and also prayed for damages. Appellant filed a general demurrer and 16 special exceptions, and answered by a general denial and that appellee voluntarily abandoned the premises without the consent of appellant. The cause was tried by jury, and resulted in a verdict and judgment canceling the lease and deed of trust.

There was evidence which supported the verdict and sustained the allegations of the petition. Appellant knew the purposes for which his premises were leased by appellee, and the contract was made under the mutual mistake of the parties that a meat market could be conducted in the rented premises. Such occupation was, however, unlawful on the premises, and appellee was forced to give up his occupation by the police of San Antonio.

[1, 2] The petition was not subject to general demurrer. The facts stated in the petition rendered it unnecessary to allege that appellee was ready and willing to perform the contract. The city ordinance rendered it impossible for him to carry on his business, and he alleged that he had no other occupation, and that appellant would not permit him to sublease the property. He also alleged that he had been induced to lease the premises by the representations of appellant, who was his attorney, that his occupation could be conducted in the premises. The latter allegations were properly made and were not subject to the special exceptions aimed at them, the overruling of which is assailed in the second assignment of error. It is true that appellee agreed in his contract to use the premises for legitimate purposes, but he had the right to show that appellant not only knew for what purposes the premises were rented, but advised appellant that such use was legitimate and proper. If there was an illegitimate use of the premises, it was done with the knowledge and consent of appellant, and under his advice and counsel. The case of Beer v. Landman, 88 Tex. 450, 31 S. W. 805, cited by appellant, has no applicability to the facts alleged or proved.

[3] There was an allegation that "the ordinance of the city of San Antonio forbidding the operation of a meat market within designated territory, including the premises in question, "was and is a valid ordinance of said city, legally passed and adopted," and that was all that it was necessary to allege. The pleading covered everything that was necessary to make the ordinance legal and valid, and there was no more ne-

cessity for alleging that the ordinance had been published at least 10 times in some newspaper, than it was to allege that it was approved by the mayor or passed over his veto, or any of the other details necessary to make a valid ordinance. The case of City of Austin v. Walton, 68 Tex. 507, 5 S. W. 70, is not authority for the position taken by appellant under the fourth and fifth assignments of error. That decision does not hold that it was necessary to allege every step taken in the passage of an ordinance, but merely that the petition should have stated the contents of the ordinance so that the court could judge whether plaintiffs were entitled to recover commissions or not. The same rule is stated in Brush Co. v. Lefevre, 93 Tex. 604, 57 S. W. 640, 49 L. R. A. 771, 77 Am. St. Rep. 898. If appellant deemed the ordinance invalid, he should have alleged and proved it.

[4] The petition clearly alleges the ignorance of appellee, and that, in reliance upon the superior knowledge of law on the part of appellant, he had rented the house and engaged in his chosen occupation, and that only upon being arrested did he learn that he had been violating an ordinance of the city of San Antonio. If he violated the law, he did it upon the advice of appellant upon whose advice as an attorney he relied and acted, and appellant is in no position to claim that such violation of law puts appellee without the pale of relief of a court of equity. He alleged and proved that he acted upon the advice of appellant in whom he had implicit confidence. Appellant admitted that he knew the purposes for which the property would be used, and told appellee that he would protect him if anybody bothered him. If the contract was an illegal one, appellant was a party to and the instigator of it, and he cannot invoke the illegal act of appellee in order to avoid a rescission of the contract. Both parties being equally guilty, if either is, the law would favor a rescission and will not "leave the parties where it finds them." As said by this court, quoting from an Arkansas decision, in Lewy v. Crawford, 5 Tex. Civ. App. 293, 23 S. W. 1041: "And this distinction is made: That where the action is an affirmance of an illegal contract, for the performance of an engagement malum in se, it can in no case be maintained; but where the action is in disaffirmance of such a contract, and, instead of endeavoring to enforce it, presumes it to be void and seeks to prevent the defendant from retaining the benefit which is derived from an unlawful act, then it is consonant with the spirit and policy of the law that he should recover." If appellee leased the premises for an illegal purpose, appellant knew it, advised it, and was a party to it, and courts will lend their aid in the disaffirming and the setting aside of such a contract. This is said merely as a reply to the contentions of appellant, for there is no indication that either party desired to violate the law, but that both were ignorant of the existence of the ordinance.

[5] The sixth assignment of error cannot be sustained. There is nothing unreasonable in the ordinance pleaded by appellee, and neither is it against any "common right," nor does it foster a monopoly. It is clearly authorized by the charter (article 2, § 69), which empowers the city council "to erect and maintain market houses and regulate everything relating to butchers," to prevent the sale of meats in certain locations. Palestine v. Barnes, 50 Tex. 538; Newsom v. Galveston, 76 Tex. 559, 13 S. W. 368, 7 L. R. A. 797. As was said in the last-cited case, no one was denied the right to sell meats, but was denied the right to sell at a particular place. It has been held that power to make ordinances concerning markets authorized a city to prohibit the sale of meats except at the public market, also the power to regulate the sale of meats gave authority to prohibit the sale outside the market house of meat in quantities less than one quarter. Dillon, Mun. Corp. §§ 703, 704, 705, and notes.

[6] The charge assailed in the seventh assignment of error presented the law applicable to the facts. Appellant promised and agreed to protect appellee from any one who disturbed him. That evidence did not vary the terms of the written contract which required appellee not to engage in any illegitimate business in the house. The testimony merely showed that appellant instructed appellee in advance that the running of a meat market was not illegitimate.

[7, 8] The ordinance is plain which prohibits the establishment of a meat market within six blocks of the city market house. There is another ordinance which gives authority to the city council to grant to individuals the right of establishing in any designated locality within the city stalls for the vending of meat; but, in order to prevent a conflict between that and the first-mentioned ordinance, the latter must be held to embrace all of the city except that portion in which the establishment of meat markets is absolutely prohibited. That construction was placed on the ordinances by the city authorities. Appellee, however, did apply to the mayor and city clerk for, and failed to obtain, a permit or license to operate his meat market. It would seem that an application for a permit would quite appropriately be filed with the city clerk even though addressed to the city council.

[9] The tenth assignment of error complains of the refusal of the court to give his second special instruction, which denied appellee a recovery if he connived at his arrest and encouraged the officers in preferring charges against him; but, in view of the fact that the court at his request gave a

charge containing the same matter, it is not apparent that appellant has suffered by the refusal to give the second special charge. The charge given by the court at the request of appellant is as follows: "If you believe from the evidence that plaintiff connived at his own arrest by officers of the city of San Antonio, or encouraged such officers in preferring charges against him and arresting him, and thereupon voluntarily abandoned the leased premises, then I charge you that you may not by your verdict cancel the lease and deed of trust upon the grounds for such prosecution and arrest." The charge is couched in the language of appellant and should be satisfactory to him. It is true Newnam swore that appellee desired to be moved out of the house because "it was too bad a stand"; but appellee gave a different version to the matter, and the jury did not seem to credit the testimony of the former. Appellee stated that the assistant market master first spoke to him about the ordinance, and that Newnam told him the city would make him move. The market master corroborated appellee.

[10] Appellee followed the instructions of the assistant market master in making the application for a permit. He furnished the application, and, when it was signed, filed it with the city clerk. It would not matter whether he made an application for a permit or not, as all the testimony tended to show that appellee was within six blocks of the market house and that permits were never granted within those limits. Newnam testified: "The way to get a permit is to go to the city council if you are out of the six-block limit. Otherwise, you cannot get a permit." Uhl, the assistant market master, swore that he had never known of a permit being granted within the prescribed limits.

The fourteenth assignment of error is overruled. The ordinance evidently prohibited the sale of fresh meat within the prescribed limits. The officers of the city so construed it, and no other construction has been placed upon it.

[11-13] While the means of ascertaining the existence of the city ordinance were open alike to both parties, still the facts show that confidence was reposed by appellee in appellant, and that he was misled to his disadvantage by that confidence, and in such cases equity will interpose and set aside a contract so obtained. Equitable relief "will be granted when the ignorance or misapprehension of a party concerning the legal effect of a transaction in which he engages, or concerning his own legal rights which are to be effected, is induced, procured, aided, or accompanied by inequitable conduct of the other parties. It is not necessary that such inequitable conduct should be intentionally misleading, much less that it should be actual fraud; it is enough that the misconception of the law was the result of, or even aided or accompanied by, incorrect or misleading statements, or acts of the other party." Pomeroy, Eq. § 847. Again, in section 848 it is said by the same learned author: "Where an ignorance or misapprehension of the law, even without any positive, incorrect, or misleading words or incidental acts, occurs in a transaction concerning the trust between two parties holding close relations of trust and confidence, injuriously affecting the one who reposes the confidence, equity will, in general, relieve the one who has thus been injured." While mistakes of the law cannot usually be made the ground of relief, yet in numerous instances mistakes of persons as to their own private rights and liabilities may be regarded and dealt with as mistakes of fact. And when the mistake has been brought about by some one possessed of superior knowledge, in whom trust has been reposed, a case is made for the intervention and relief of a court of equity. It is true in this case no very close relations between appellant and appellee, matured by time and developed in many transactions, were shown by the evidence, yet the confidence of the layman in the wisdom and legal knowledge of an attorney may be of the highest order and deepest nature, without the latter having ever transacted business for the other; such confidence being caused by the reputation of the attorney for probity, honesty, and learning in the community. This relation of trust and confidence between the parties was shown in this case.

The judgment is affirmed.