REYNOLDS v. GREGG et al. (No. 10472.)

(Court of Civil Appeals of Texas. Fort Worth. Jan. 12, 1924. Rehearing Denied Feb. 16, 1924.)

1. Bills and notes ⬤=443(3)—Assignee may recover in own name.

Under Rev. St. arts. 579, 582, assignee of a note may sue thereon in his own name.

2. Bills and notes ⬤=524—Mere possession not sufficient proof of assignment.

Mere possession of a note is not sufficient proof of an assignment which would warrant suit by the one in possession, under Rev. St. arts. 579, 582.

3. Bills and notes ⬤=214, 524—Assignment need not be in writing or by indorsement; possession and oral proof of assignment sufficient.

Assignment of a note need not be in writing or by indorsement, and possession and oral proof of assignment is sufficient.

4. Bills and notes ⬤=485—Want of assignment of note must be denied by verified plea.

Under Rev. St. art. 588, the defense of want of a sufficient assignment of a note must

be asserted by a verified plea, in view of article 1906, par. 9.

**5. Pleading ⬷8(11)—Allegation of ownership of notes only legal conclusion.**

Allegation in pleadings in an action on notes that a third party was the owner of the notes was but a legal conclusion.

**6. Gaming ⬷19(3)—That notes transferred in payment of bet no defense in action against maker.**

Where holder of valid notes delivered them to another in payment of a bet, the maker of the notes could not set up the gambling transaction as a defense.

**7. Vendor and purchaser ⬷261(2)—Assignment of notes held to carry vendor's lien.**

Assignment of notes carried with it vendor's lien given to secure the notes.

Appeal from District Court, Young County; P. A. Martin, Judge.

Suit by B. F. Reynolds against J. S. Gregg and others. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

Johnson & Johnson, of Fort Worth, for appellant.

J. H. Wood, of Sherman, for appellees.

CONNER, C. J. Appellant, B. F. Reynolds, instituted this suit in the district court of Young county, and in his first amended original petition, filed September 26, 1922, alleged that on December 13, 1917, for a valuable consideration, the defendant J. S. Gregg executed two promissory notes of that date, payable to the order of C. V. McCary, each of said notes being for the sum of $250, bearing 8 per cent. interest; that said notes were numbered 5 and 6, in a series of six notes, and had been given for a tract of land purchased by Gregg and described in the petition.

It was further averred that on March 20, 1919, Gregg conveyed said land to A. J. Cantwell, in consideration of which Cantwell, among other things, assumed the payment of the notes executed by Gregg; that plaintiff was "still the owner and holder of each of said notes for value in due course of business without notice and in good faith and before maturity." The plaintiff alleged that said notes 5 and 6 were secured by a vendor's lien upon the land described in the petition and conveyed to Cantwell, and he prayed for judgment for the amount due upon the notes, with a foreclosure of the vendor's lien against Gregg as maker and Cantwell upon his assumption.

The transcript shows a pleading, indorsed "the defendant's original answer," addressed to the March term of the district court of Young county, 1922, in which A. J. Cantwell and J. S. Gregg appeared and alleged that it was true that the defendant Gregg had ex-

ecuted and delivered to C. V. McCary and the defendant Cantwell had assumed the payment of said notes. It was further alleged, however, that C. V. McCary had, by written transfer duly recorded and made a part of the answer, sold, transferred and delivered to J. E. Harrell the notes described in plaintiff's petition, whereby said J. E. Harrell became the owner and holder in due course of law of the said vendor's lien notes and the vendor's lien securing the same, and that on August 19, 1921, the defendant A. J. Cantwell had paid to the said J. E. Harrell, the owner and holder of the vendor's lien notes sued on, the sum of $919.13 in full satisfaction of the six vendor's lien notes, being notes Nos. 3, 4, 5, 6, 7, and 8, of which notes 5 and 6 had been declared upon by the plaintiff. It was alleged that such payment discharged in full the cause of the action set up in plaintiff's petition, and that said J. E. Harrell had duly executed a release and discharge from any and all liens retained to secure the notes mentioned, which release had been duly recorded, a copy of which was attached and made a part of the answer.

A general demurrer was also pleaded to every fact stated in plaintiff's petition, except such as had been specially admitted in the answer. This answer was verified by the defendant Cantwell on September 26, 1922, but the date when filed is not shown.

At the same term of court, to wit, the September term, 1922, the defendants Gregg and Cantwell further filed a general denial "of the allegations in the first amended petition and pray the court that J. E. Harrell of the county of Throckmorton, state of Texas, be joined herein as a party defendant, and that if judgment should be rendered herein in favor of plaintiff and against these defendants that these defendants have judgment over against said J. E. Harrell in the same amount as shall be recovered by plaintiff against these defendants." This answer appears to have been filed September 25, 1922.

The transcript further shows that on the same day, to wit, September 25, 1922, J. E. Harrell appeared and filed a pleading which contained a general denial of "every allegation in plaintiff's petition contained," and further alleged that he "adopts the pleadings of the defendants J. S. Gregg and A. J. Cantwell as his own pleadings and says the allegations in their said answer are true and correct, all of which he is ready to verify." And by way of a special answer further pleaded:

"B. F. Reynolds at no time paid any consideration for the notes sued upon and described in his original petition or his first amended original petition herein, but on the contrary he came into possession of them by virtue of a wager in violation of the statutes of the state of Texas, and that the plaintiff is now attempt-

ing to use this court in the collection of a gambling debt, a transaction which grew out of a violation of the law of the land and against the public policy of the state, and is therefore unenforceable in the courts of our state."

By a pleading filed on the following day, to wit, September 26, 1922, the plaintiff demurred to the application of defendants Gregg and Cantwell to make J. E. Harrell a party on the ground that no sufficient cause therefor had been stated. The plaintiff also filed on the same day, to wit, September 26, 1922, a further pleading entitled:

"Plaintiff's first supplemental petition in replication to the original answer of defendant herein filed at the March term of this court, 1922."

The plaintiff therein denied all of the allegations of the defendants' answer, and further specially alleged:

"That for valuable consideration, before maturity in good faith, without notice of any vice, if any, plaintiff purchased said notes hereon sued on being Nos. 5 and 6 from J. E. Harrell, the record owner, on or about the ―――― day of November, A. D. 1920, at which time said Harrell, the record and true and lawful owner of said notes, delivered said notes to plaintiff by oral transfer and oral assignment but by actual delivery. That the defendants and each of them were then notified by plaintiff that plaintiff was the owner of said notes, the true and lawful holder of same, and that said notes were held by plaintiff and in plaintiff's possession. That at the time of said notice none of said notes had been paid, but that all of said series of six notes each for the sum of $250 were outstanding against said land and the notes hereon sued on were unpaid and were outstanding against said land. That the oral transfer and assignment to plaintiff to these two notes hereon sued on was in all things legal."

The supplemental petition contained other allegations of like import.

The transcript shows that the case went to trial upon the state of pleadings as above given, and that the court, after having heard the evidence, rendered judgment denying plaintiff any recovery, dismissing the cause of action as against the defendant Harrell, and that plaintiff "take nothing by his said suit against the defendants J. S. Gregg and A. J. Cantwell, and that said defendants recover their costs from plaintiff." From the judgment so rendered, the plaintiff has duly appealed and assigns error.

Upon the trial it was admitted in behalf of the defendants that all of the allegations of the plaintiff's petition with reference to the legality of the notes declared upon were true and that the defendant Cantwell at and prior to the time he paid the defendant Harrell the notes in controversy had actual notice that notes 5 and 6, sued upon by the plaintiff, were held by him and that the plaintiff claimed the same. It is further undisputed that McCary, the payee of the notes, had transferred them to defendant Harrell, as alleged by the defendants, and that the defendant Cantwell had paid Harrell notes 5 and 6 and Harrell had executed a release of the lien on the land, given to secure said two notes.

The plaintiff Reynolds testified that he was the owner of the notes declared upon in his petition, and that:

"I got those notes the day after the primary election when Bailey and Neff run for Governor. The doctor and I had a little gambling bet on the election, and I acquired these notes by virtue of that gamble. Dr. Harrell delivered me these notes in payment of that gambling debt. * * * I bet Harrell $500 that Neff would beat Bailey in that election. I put up $500 worth of government bonds against his vendor's lien notes. I don't recollect what kind of bonds they were; they were registered, I think."

In behalf of defendant, it was admitted that Harrell was the owner of notes 5 and 6 "on the date he delivered the same to the plaintiff, B. F. Reynolds." Defendant Harrell was permitted to testify, over the objection of the plaintiff, that it was irrelevant and immaterial, that:

"I did not sell those notes to Mr. Reynolds and did not receive any consideration at all for them. The way he came into possession of the notes was this: At that time Judge Reynolds was county judge and the day before this happened he was flaunting $1,000 in his offices and different places, as I understood it, to make votes for Neff, and I told a friend of mine he was bluffing and I didn't believe the county judge would make a bet and I would go over with some unsigned notes and bluff him out, and I made up my mind to go over and call his bluff. The judge said he wouldn't take $1,000 then, that he would put up $500, and I told him I had some notes and would put up the notes and he said he didn't have any money but would put up bonds, and we put them in an envelope and I put them in my pocket and the next morning after the election I had to leave Throckmorton and I just handed him the notes. We were holding our own stakes. I was the owner of these notes when Mr. Campbell paid them, and I executed the release that was offered in evidence."

On cross-examination, he testified:

"I delivered the notes Nos. 5 and 6, the ones sued on, to the plaintiff. I did not deliver them to him with the intention that they were his. I knew they were not his. There wasn't any indorsement on the notes and I just intended to bluff him out. I was going to rue that bet. I delivered the notes to him. I gave him the notes to hold until I got back. We were our own stakeholders; we agreed on that, that one of us would hold them. I didn't bring suit against Mr. Reynolds because I had lost notes before and didn't figure it would amount to anything. I did not figure this was a bet which I lost.

The reason I gave them to Mr. Reynolds was it was a big envelope and I couldn't carry it in my pocket very well and we had agreed to hold it, and I just handed it to him. That was the next morning after the election. I did not already have the returns of the election then. I didn't get the notice in the paper that Neff had been elected until three or four days later. I did not have that notice at the time I gave him the notes. It isn't funny that I would let him keep the bonds and notes too; the bonds were not worth more than the paper they were written on; they hadn't been signed. They were worth as much as my notes without a transfer. I did not deliver those notes to him with the intention of delivering any value. I did intend to deliver the notes; I didn't care for the paper. I intended for him to' hold these stakes. I had not thought of it being permanent because it was all a bluff to start with."

On redirect examination, he testified:

"I first had the envelope that contained the notes and bonds. I put them in the safe at first, and then I put them in my pocket next morning. I had a conversation with him relative to why I turned him over the notes. I told him we would take the bet down, that there seemed to be a whole lot of talking about the gambling and they might consider it that way, and he said, 'All right.' "

[1-3] Under the terms of our statutes, the assignee of a negotiable promissory note, such as those declared upon in this suit, may sue to recover thereupon in his own name. See Rev. Statutes, arts. 579, 582. Mere possession, however, of such a note is not sufficient proof of an assignment. See Ross v. Smith, 19 Tex. 171, 70 Am. Dec. 327; Merrill v. Smith, 22 Tex. 54; Thompson v. Bohannon, 38 Tex. 241. But the assignment need not be in writing or by indorsement on the note. Possession together with oral proof of the assignment of a negotiable promissory note is held to be good in this state as well as in other jurisdictions. See Word v. Elwood, 90 Tex. 130, 37 S. W. 414; Williston on Contracts, vol. 1, § 430, p. 807 et seq.

[4] We have set out the pleadings in this case with more particularity than usual in order that it may be apparent that the plaintiff, particularly in his supplemental petition, presented the issue of an oral assignment, and that to such pleadings of the plaintiff neither defendant made any answer. The only pleadings of the defendants found in the transcript was the answer of the defendants Gregg and Cantwell to the effect that Harrell was the owner and holder of the notes sued upon by the plaintiff at the time they were paid off by Cantwell, and when he received his release of the vendor's lien. And the verified pleadings of defendant Harrell merely adopted the allegations of the answer of the other two defendants, coupled with the further allegation that the plaintiff had received the note in a gambling transaction; and both of these pleadings were filed prior to the filing of plaintiff's supplemental petition. We think it perfectly apparent, therefore, that the issue of an assignment of the notes by Harrell to plaintiff was presented in the plaintiff's pleadings and not denied by any verified plea on the part of any of the defendants. In order that the want of a sufficient assignment might be available, it must be denied by a verified plea. In the statute dealing with the subject of bills and notes, it is provided, by article 588, so far as pertinent, that:

"When a suit shall be instituted by an assignee or indorsee of any written instrument, the assignment or indorsement thereof shall be regarded as fully proved, unless the defendant shall deny in his plea that the same is genuine."

Yet another statute declares that:

"A plea denying the genuineness of the indorsement or assignment of a written instrument, as required by article 588," shall be verified by affidavit unless the truth of the pleadings appear of record. See Rev. Stats. art. 1906, paragraph 9.

See, also, Grounds v. Sloan, 73 Tex. 662, 11 S. W. 898. In that case, our Supreme Court, in discussing article 588, had this to say:

"Clearly this statute intends to give an assignee of a written instrument the right to recover upon it without other proof than the production of the endorsed instrument, unless its genuineness is denied specially in the answer, supported by an affidavit. Without such plea and affidavit, evidence contesting the validity of the assignment should not be heard. Even if evidence to the effect that the assignment for any cause is invalid or incomplete should be admitted, in the absence of the plea required by the statutes it would go for nothing. A valid judgment cannot be rendered on evidence unsupported by a proper pleading. Without the prescribed plea the language of the statute is that the assignment 'shall be regarded as fully proved.' This includes delivery and everything else required to give the assignment legal effect. The statute would be of very little value to the assignee if it left it necessary for him to bring proof of the actual delivery of the assigned instrument, or left that fact open to attack under a general denial."

[5] The quotation we have made from the case in 73 Texas was quoted by our Supreme Court with approval in the later case of Schauer v. Beitel's Executor, 92 Tex. 601, 50 S. W. 931. Applying the principle so stated, it seems evident that the plaintiff's objection to Harrell's testimony should have been sustained, and that we cannot give any effect thereto. The allegation in the pleadings of Gregg and Cantwell, adopted by the defendant Harrell, to the effect that Harrell was the owner of the notes, is but a legal conclusion, and the allegation that he was also the holder at the time Cantwell paid them to Harrell is refuted by the undisputed

evidence. Considering the pleadings and evidence as a whole, it follows, we think, that the theory of the defense was, at least at the time of the announcement of the latter for trial, that the acquisition of the notes by the plaintiff Reynolds was void on the ground that they had been acquired as the result of a gambling transaction, and we infer from the briefs of counsel that it was upon this theory that the court's judgment was in favor of the defendants. We are of the opinion, however, that the judgment cannot be supported on any such theory. True, it has been held frequently that the courts will not sustain a contract based upon a gambling consideration. To illustrate, it was held in the case of Lewy v. Crawford, 5 Tex. Civ. App. 293, 23 S. W. 1041, that a wager on the result of an election is illegal, null, and void as between the parties, and that a stakeholder who had been notified by the loser not to pay the money over to his adversary, after the result of the election had become known, but before an actual payment has been made, cannot defeat an action by such party for its recovery. Many other cases of like import might be cited, but the one cited will illustrate the principles we have in mind. A consideration of the case; however, will show that the rights of the stakeholder to hold the money and to pay it over to the assignee was dependent wholly upon the gambling contract. In that case to sustain the defense, it was necessary for the stakeholder, in behalf of the assignee, to set up and seek to enforce the gambling contract to pay the money to the assignee in the event he won the bet. In other words, the gambling contract had not been executed by the delivery of the money to the winner of the bet, and this is made the test in the decisions. As said in the case of Floyd v. Patterson, 72 Tex. 202, 10 S. W. 526, 13 Am. St. Rep. 787.

"If the transaction has been completed and another grows out of it collateral to it, dependent upon a new consideration, the new contract is not vitiated by the taint of the old one, and will be enforced."

The court then quotes from cases, citing the following:

"It has been observed that the test whether a demand connected with an illegal act can be enforced is whether the plaintiff requires any aid from the illegal transaction to establish his case."

The court further referred to the case of Owen v. Davis, 1 Bailey (S. C.) 315, not available to us, which stated that in that case:

"The defendant received a note in settlement of the joint winnings of plaintiff and himself at cards. He transferred the note in payment of a gambling debt of his own to a third party who received payment of the maker

at a discount. The plaintiff was held entitled to recover one-half of the amount which was actually paid by the maker of the note. In these cases, and in many similar ones which need not be cited, it is held that the cause of action is not dependent upon the illegal transaction."

In the case of Oliphant v. Markham, 79 Tex. 543, 15 S. W. 569, 23 Am. St. Rep. 363, our Supreme Court, in reference to a contract held to be illegal as against public policy, said:

"But it does not follow that every contract which is incidentally connected with or grows out of such a transaction is tainted with its vice. In the case referred to [Floyd v. Patterson, 72 Tex. 202] the doctrine was recognized 'that the test whether a demand connected with an illegal act can be enforced is whether the plaintiff requires any aid from the illegal transaction to establish his case.'"

[6, 7] Applying the test so approved, we are of the opinion that the fact that the plaintiff acquired the notes upon which he declared by delivery and oral assignment as a payment on a gambling debt wil not be defeat his recovery. The voluntary delivery of the notes to the plaintiff is admitted, and the assignment thereof to him is not denied by any evidence to which we can give effect. His cause of action, therefore, as against the maker of the notes and as against the defendant Cantwell, who assumed the payment, was upon those notes and not upon the gambling debt; no legal necessity rested upon him, in order to establish his right of recovery against these defendants, to refer to or invoke the aid of the betting contract that he had made with the defendant Harrell, and it is undisputed in the evidence that Gregg gave the notes for part of the purchase money for a tract of land purchased by him and described in the pleadings, and that as a part of the consideration Cantwell agreed to pay for the land; he assumed to pay those notes, and the plaintiff was entitled to judgment thereon. Furthermore, the assignment of the notes to him carried with it the vendor's lien given to secure the notes. See White et al. v. Downs et al., 40 Tex. 226; Russell v. Kirkbride, 62 Tex. 455.

It is accordingly ordered that the judgment below be reversed and here rendered for appellant against the defendants Gregg and Cantwell for the principal sum and interest as specified in the notes declared upon with a foreclosure of the vendor's lien upon the land described in the plaintiff's petition as prayed for, together with all costs incurred in this court and in the court below. It is further adjudged in accordance with the plea of appellees Gregg and Cantwell that they recover of the defendant Harrell all such sums as they may be required to pay plaintiff under the terms of this judgment.