### No. 545.

1. **Insolvent Estate—Homestead—Surviving Wife and Minor Child.—**A owned a tract of land jointly with his children by a former marriage, which he occupied at time of his death as a homestead, and died insolvent, leaving appellant as surviving wife, and a daughter born after his death, who were together entitled to a homestead in his interest in the land. Appellee procured a deed from her to the land upon a fraudulent representation, among other things, that upon her death, under the law, the premises would go to creditors, and that in the event of her marriage she would lose all right to the homestead. *Held,* that these representations were, in point of law, untrue, and were material representations.

2. **Equity—Mistake of Law—Cancellation of Deed.—**Equitable relief, affirmative or defensive, will be granted when the ignorance or misapprehension of a party concerning the legal effect of a transaction in which he engages, or concerning his own legal rights which are to be affected, is induced, procured, aided, or accompanied by the inequitable conduct of other parties.

3. **Same—Undue Influence.—**Where parties have acted under a mistake of law, though there be no actual fraud, if one is unduly influenced and misled by the other to do that which he would not have done but for such influence, and he has in consequence conveyed property to another without consideration, equity will, if possible, restore both parties to the condition they were before.

4. **Same—Mistake of Doubtful Law.—**Equity will relieve against a fraudulent and misleading representation made as to the state of the law in respect to the consideration on which alone the party could have been induced to sign the instrument, where the law is doubtful.

Aᴘᴘᴇᴀʟ from Gonzales. Tried below before Hon. T. H. Sᴘᴏᴏɴᴇʀ.

*Atkinson & Abernathy,* for appellants—1. A mistake in law, produced by the representations of the other party, is as good a ground for relief in equity as a mistake in fact, and the rule which refuses relief against ignorance or mistake of law is not enforced in equity, where such ignorance or mistake is induced by fraud or imposition or undue influence, or an abuse of confidence springing out of the peculiar relations existing between the parties. Webster v. Mann, 52 Texas, 426; Gibson v. Fifer, 21 Texas, 261; Spurlock v. Brown, 18 S. W. Rep., 872, and authorities; Pom. Eq. Jur., sec. 842; Laws. Rights, Rem., and Prac., sec. 2341; Story Eq. Jur., sec. 122.

2. In order to have a deed canceled, it is not necessary to show that the person making it was weak-minded, or that he made effort to ascertain the true facts in relation to the property conveyed in the deed. If the grantor was misled as to the true facts in regard to the interest

in the property held by him, or as to the title under which he held, by representations of the grantee, and thereby transferred valuable property for a grossly inadequate consideration, or no consideration at all, such grantor is entitled to a cancellation of the contract, especially if there has been an abuse of confidence springing out of the peculiar relations existing between the parties. And the grantor is entitled to such cancellation, no matter whether grantee was acquainted with the true facts, and perpetrated actual fraud upon the grantor, or was himself unacquainted with the true facts, and while acting innocently in the matter, acted in legal fraud of plaintiff's rights. O'Connor v. Duke, 29 Texas, 309; Culbertson v. Blanchard, 79 Texas, 486, and authorities cited; 1 Story Eq. Jur., 7 ed., secs. 140, 143; Kerr on Fraud and Mistake, ed. 1872, chap. 2, "Mistake," pp. 398–402.

No brief for appellee reached the Reporter.

NEILL, ASSOCIATE JUSTICE.—Appellant, plaintiff below, brought this suit for herself and as next friend for her minor daughter Eva, for the cancellation of a certain deed executed by her to the appellee.

The allegations in her petition are substantially as follows: That she is the surviving wife of L. N. West, deceased, and that Eva, who was born after the death of her father, is their only child; that upon his death her husband left an estate, which was insolvent, worth about $10,000. That before his marriage to her, L. N. West made his will, bequeathing all property of which he might be possessed, in which no provision was made for either her or Eva, of which will W. D. Finney and Eugene West were appointed executors; that shortly after the death of the testator his will was, in April, 1890, duly probated in the County Court of Gonzales County; that the executors named therein duly qualified; and that the estate is still pending and unsettled in said court.

That on April 13, 1891, without the consent of plaintiff or of Eva, or of any person authorized by them, the County Court of Gonzales County proceeded to set aside as a homestead to herself and child a certain lot in the village of Leesville, Gonzales County, together with the improvements thereon, which order is as follows:

"ESTATE OF L. N. WEST, DECEASED.

"No. 1214.                              "TUESDAY, April 14, 1891.

"This day, Monday, April 13, 1891, came on to be heard the application of Mrs. West, surviving widow of L. N. West, deceased, praying that the homestead of herself and her said husband upon which they lived at the time of the death of the said L. N. West, situated in the town of Leesville, Gonzales County, Texas, be set aside to her for her use and the use of her said minor child L. N. West, Jr. [meaning, as plaintiffs believe and allege, said Eva West], now about one year old, which application having been heard and fully understood, the

same is in all things granted. And the said homestead being the residence of L. N. West, deceased, at the date of his death, situated in the town of Leesville, Texas, being lots numbers —, in block containing about two acres of land, be and the same is hereby set apart to the said Mrs. West, for her use and the use of her minor child, said West, to be used and controlled by them in all thing as allowed by law."

That the premises so attempted to be set aside as a homestead were the community property of her husband and his first wife, and therefore subject to partition between the estate of L. N. West and his children by his first wife, as the heirs of their mother. That on July 26, 1891, at the solicitation of defendant, Jeff C. West (appellee), she executed to him a deed conveying her interest in the premises described in said order, which expressed a consideration of $100. But that in fact no consideration was ever paid, and the deed was wholly without consideration. That her execution of the deed was procured by false and fraudulent representations, which were known at the time by defendant to be false, but were believed and relied upon by her, and induced plaintiff to execute said deed. Such representations were: That she was entitled to only one-half interest in a homestead, and that the children of her husband by a former wife were entitled to the other half, and that he intended purchasing the interest of the other heirs therein; that plaintiff's interest in the homestead was not worth over $50; that at her death her interest would go to the creditors of L. N. West's estate; and that in the event she married again, she would lose all right, title, and interest in the premises. That he promised he would always care for and provide for Eva as long as plaintiff resided near him, and would look after the child's interest as only an elder brother could, and that after plaintiff's death, he would take charge of and fully provide for Eva; and that he professed great love for plaintiff and her child, and promised plaintiff $100 for her interest in the premises for Eva's benefit. That such representations were made for the purpose of overreaching plaintiffs and defrauding them out of their right to any homestead or exemptions in lieu thereof out of L. N. West's estate, and of himself acquiring valuable property from plaintiffs without consideration. That defendant never executed any note for the payment of the purchase money, and has never paid anything for the property; that although since the deed was executed plaintiffs had lived in defendant's neighborhood, he had wholly failed and refused to care or provide for or do anything for Eva, and still so fails and refused to do, and never intended to do so at the time he promised; that defendant is in possession of the premises, holding and using the same as his own, and claiming title thereto under said deed; and that he refuses to cancel the deed or restore the premises to plaintiffs, though often demanded, to their damage $2500. That there is no other property belonging to the estate of her deceased husband suitable for a homestead; that being the community property of L. N.

West and his first wife, and subject to partition between his estate and the children by the first marriage, the premises in controversy can not be legally set aside as a homestead for plaintiffs. That claims exceeding $15,000 against the estate of her deceased husband have been allowed by the executor and approved by the court. That at the time the homestead was set aside to plaintiffs, and when the deed was made to defendant, she did not know whether or not the premises were community property of deceased and his first wife, nor did she know by what title it was held; that she never had any control or possession of the property after the death of her husband; that at the time of his death, on account of ill health, she went to her brother's for care and attention, where Eva was born; that during confinement the premises were rented, and that after her recovery, about a month after her husband's death, she found defendant in possession and control of the premises, renting and using the same. That she demanded possession thereof, which defendant refused to give, but retained possession himself until she executed the deed to him. That she ascertained, subsequent to the execution of the deed, the fact of the community interest in the premises of the estate of L. N. West's first wife, and of its being subject to partition between the children of the first marriage and her husband's estate, and that the property could not be equitably partitioned in kind among the several owners. That claims exceeding $15,000 against her husband's estate had been allowed by the executor and approved by the court. That having ascertained that the premises were community property, as before stated, the plaintiff Mary L. West, on August 29, 1891, filed in said County Court her application to have the order setting aside the premises as a homestead annulled and vacated, and praying for an allowance in lieu of a homestead, out of the estate of her husband; that the application is pending and undetermined in the District Court of Gonzales County, on certiorari from the County Court; but that certain creditors of the estate whose claims have been established are contesting the application, and are urging, among other reasons that she has conveyed her interest in the premises and received the money therefor.

It is then alleged, "that if the deed should be canceled, no injury would or could result to defendant, because he has paid nothing for Mary's interest in the premises, and he would still own his interest therein, as heir of his deceased mother. That if the deed be canceled, the one-half interest in the property belonging to the estate, which they allege to be worth $1250, can be returned to the estate for the benefit of the creditors, and an allowance in lieu of a homestead set aside to plaintiffs. But that if the deed be allowed to stand, both plaintiffs will be irretrievably injured; for, in the event the defendant should pay the alleged consideration, viz., $100, said sum is grossly inadequate, and the plaintiffs, especially Eva, will be deprived of the value of the homestead, viz., $2500, through no fault of theirs. That in equity and good conscience the deed ought to be canceled; that the

deed is a serious menace and obstruction to their acquiring an allowance in lieu of a homestead, and that if it be canceled, there will be no obstacle to their acquiring such allowance. That they fear, unless the deed be canceled, plaintiffs will be defeated in their application for such allowance, and they thereby be deprived of the value of such allowance by reason of such wrongs and frauds, etc., on the part of defendant."

The appellee, defendant below, filed special exceptions to plaintiffs' petition, which were sustained, and the plaintiffs declining further to amend, judgment was rendered dismissing the case, from which this appeal is prosecuted.

*Opinion.*—The petition shows, that the premises in controversy were acquired during the marriage of L. N. West and his first wife, as their community property; that the first wife died, leaving children by the marriage surviving her, one of whom is the appellee. Upon her death her half-interest in the property vested in her children, and had not been divested when the deed sought to be canceled was executed. Upon L. N. West's death, his widow Mary L. and minor child were entitled to his half-interest as a homestead, subject to partition of the interest of the children of his first wife. Putnam v. Young, 57 Texas, 462; Pressley's Heirs v. Robinson, 57 Texas, 454; Gilliam v. Null, 58 Texas, 299; McDougal v. Bradford, 80 Texas, 558. Therefore, if the appellee represented to appellant that she was entitled to only a half-interest as a homestead in the land set aside to her, such representation was in itself neither false nor fraudulent.

The estate being insolvent, the interest of L. N. West in the homestead descended and vested as other property subject to the use of his surviving wife and minor child, and was not liable for the debts of the deceased. Zwernemann v. Von Rosenberg, 76 Texas, 522; Childers v. Henderson, 76 Texas, 664; Cameron v. Morris, 83 Texas, 14. But the Constitution is imperative that the homestead shall not be partitioned among the heirs during the life-time of the surviving wife, or so long as the survivor may elect to use or occupy the same as a homestead, or so long as the guardian of the minor children of the deceased may be permitted, under an order of the proper court having jurisdiction, to use and occupy the same. Art. 16, sec. 52; Hall v. Fields, 81 Texas, 553. Hence the appellee's statements to Mary, "that at her death her interest would go to the creditors of L. N. West's estate; and that in the event she should ever marry again she would lose all right, title, or interest in the premises," are not true. The statement that her interest at her death would go to the creditors of the estate, so far as it affected appellant, may be regarded as unimportant, for as it was only a homestead interest it would terminate at her death, and it would be immaterial to her whether it went towards the payment of her husband's debts, or descended to his heirs. But as to Eva, whose welfare her mother must have had in mind, such

statement was material, and if true would affect her interest, for it involves the idea that the mother's interest in the homestead would at her death be separable from the child's, and become assets of the husband's estate. Whereas, we have seen the homestead could not be taken from her as long as her guardian might be permitted, under an order of the proper court, to use and occupy it. The representation, that if Mary should marry again she would lose all right, title, or interest in the premises, was material; for if true, it affected the duration of her right, and terminated it upon the event of her marriage.

As the case is presented to us, we must assume that appellee made these false representations to Mary, and falsely promised her that he would care and provide for Eva as long as her mother resided near him, and would, as an elder brother, look to the child's interest and fully provide for her on her mother's death; and that though Mary's interest in the property was not worth $50, he would pay her for it $100. It must also be taken as true that these representations and promises were made for the purpose of defrauding Mary and her child out of their homestead interest. That she believed said representations to be true and relied upon his promises, and that by them her fears, compassions, and sympathies were so wrought upon that she was induced, without consideration, to execute said deed.

The question then is, are these facts sufficient to warrant a court of equity in decreeing a cancellation of the instrument? A a general rule, a mistake of law pure and simple is not adequate ground for relief. While this general doctrine prevails in equity as well as at law, equity sometimes exercises it jurisdiction on account of a mistake of law. If the mistake of law is not pure and simple, but is induced or accompanied by other special facts giving rise to an independent equity on behalf of the mistaken person, such as inequitable conduct of the other party, equity will interpose its aid. Even when a mistake of law is pure and simple, equity may in some cases interfere. In cases where the mistake is purely and simply one of law, Mr. Pomeroy formulates a rule permitting the jurisdiction of equity to relieve from such mistakes, which is as follows: "Wherever a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights, interests, duties, liabilities, or other relations, either of property, or contract, or personal status, and enters into some transaction the legal scope and operation of which he clearly apprehends and understands, for the purpose of affecting such assumed rights, interests, or relations, or of carrying out such assumed duties or liabilities, equity will grant its relief, defensive or affirmative, treating the mistake as analogous to, if not identical with, a mistake of fact." 2 Pom. Eq., sec. 849. If then there had been no representations to Mary as to the duration of her interest in the homestead, and she had believed it would cease upon her marriage, and acting under such mistaken belief she was induced to convey it for much less than its value, we would have a case difficult to distinguish from one falling within this rule.

This case, however, is one where the mistake of law is accompanied with inequitable conduct of the other party. Upon cases of this character, Mr. Pomeroy says: "Whatever may be the effect of a mistake pure and simple, there is no doubt that equitable relief, affirmative or defensive, will be granted when the ignorance or misapprehension of a party concerning the legal effect of a transaction in which he engages, or concerning his own legal rights which are to be affected, is induced, procured, aided, or accompanied by inequitable conduct of other parties. It is not necessary that such inequitable conduct should be intentionally misleading, much less that it should be actual fraud; it is enough that the misconception of law was the result of or even aided or accompanied by incorrect or misleading statements, or acts of the other party." 2 Pom. Eq., sec. 847; Kerr on Fraud and Mistake, 90, 400, 401. Independent of the misrepresentations and false promises of the appellee, the parties stood in unequal positions. The appellant Mary had been recently left a widow; had borne a child by her husband during her widowhood. After its birth she sought for herself and infant shelter in the late home of her husband, which was withheld from her and occupied by the appellee, who took advantage of her condition and solicitude for her babe, and by fraudulent representations and false promises obtained, without consideration, a deed to her interest in her home. The appellee was a man and half-brother to the infant, and knew his father's estate was insolvent, and that the deed he obtained was to all his father's wife could acquire from her husband's estate, save a year's allowance, and what might be allowed her in lieu of exempt property. By canceling the deed, the appellee's situation will not be changed from what it was before its execution. Even where parties have acted under a mistake of law, though there be no actual fraud, if one is unduly influenced and misled by the other to do that which he would not have done but for such influence, and he has in consequence conveyed property to another without consideration, equity will if possible restore both parties to the same condition they were before. Jordan v. Stevens, 51 Me., 78; 81 Am. Dec., 556. It seems to us that the facts alleged by appellant in this case present stronger grounds for the interposition of a court of equity. In the case of Ramey v. Allerson, 64 Texas, 697, the defendant sought in her answer to be relieved against her mistake as to the law when she signed a deed of trust by virtue of which her property was sold. Her mistake resulted from the fraudulent and misleading representations made to her as to the state of the law in respect to the vital consideration on which alone she could have been induced to sign the instrument. The question of law was a doubtful one. So in this case the question as to the appellant's and her child's interest in the homestead was one upon which lawyers and judges differed. See dissenting opinions of Chief Justice Stayton in Zwernemann v. Von Rosenberg and Childers v. Henderson, supra. And the court held, that "A contract obtained in such manner is fraudulently obtained if the repre-.

sentations were fraudulently made and intended to deceive; if not thus fraudulently conceived and intended, they were not the less misleading, and induced a fatal mistake on the party relying on their correctness. In either case, the contract is not that of a person giving consent to it under circumstances that will render it binding in equity." See also authorities quoted and cited in the opinion. We have concluded that appellant's petition states a cause of action entitling her to equitable relief, and that the judgment of the District Court should be reversed and the cause remanded. In reaching this conclusion, the allegations in the petition in relation to her application to have the order of the County Court setting aside the homestead vacated, and to have an allowance in lieu thereof made to her, have not been considered, and have not in any way influenced us in forming our opinion. The question as to what should be the action of the court on such application is not before us, and it would be improper for us to make any intimation on the subject.

*Reversed and remanded.*

Delivered January 16, 1895.

FLY, Associate Justice, did not sit in this cause.