HARRY S. POLLARD v. MRS. C. LOUIS STEFFENS.

No. A-7170. Decided February 1, 1961.
Rehearing Overruled March 8, 1961.
(343 S.W. 2d Series 234)

*Cofer & Cofer,* and *John D. Cofer* of Austin, for petitioners.

*Harold W. McCracken,* of Dallas, for respondent.

MR. JUSTICE CULVER delivered the opinion of the Court.

Our former opinion in this case is withdrawn and the following substituted in lieu thereof.

By bill of review filed against respondent, Mrs. Steffens, petitioner's stepmother, in September, 1956, the petitioner, Pollard, sought to set aside a judgment of probate court rendered in July, 1953, on the ground of a mutual mistake of law. The probate court having denied the relief sought, upon appeal to the district court, judgment was rendered in favor of petitioner. The Court of Civil Appeals reversed and rendered judgment for Mrs. Steffens. 319 S.W. 2d 447.

The mistake of law that petitioner asserts is with respect to the validity of a survivorship agreement executed by Mrs. Steffens and her deceased husband, the father of petitioner, pertaining to certain building and loan shares and Federal Credit Union deposits that were purchased with their community funds. The Building & Loan agreement provided that:

"It is understood and agreed that the shares hereby subscribed for and issued by the association, as well as all accumulations thereon, are to be held by the association for our joint account, as joint tenants with the right of survivorship, as at common law, and not as tenants in common; that the funds represented by said shares may be withdrawn by either party hereto before or after the death of either, subject to the laws of the State of Texas, and to the by-laws of the association, and either party is authorized to pledge the same as collateral security to a loan and either may draw the dividends thereon."

The Federal Credit Union agreement was in similar form.

The Court of Civil Appeals, omitting any discussion on the right of petitioner to maintain the bill of review, passed directly upon the survivorship agreement holding it to be valid and vesting title to all of the building and loan shares in Mrs. Steffens. The court considered our recent decision in Ricks v. Smith, 159 Texas 280, 318 S.W. 2d 439, to be controlling.

We granted petitioner's application for writ of error with the view of passing upon this question and resolving the conflict between this decision of the Dallas court and its former holding in Reed v. Reed, 283 S.W. 2d 311, but upon further consideration we are of the opinion that even conceding that the decision in Reed v.

Reed is correct, as petitioner contends here, nevertheless the mistake, if any, is not one for which equity will grant relief. Therefore, under well-recognized appellate judicial procedure we do not reach or decide the question as to whether or not under the above-mentioned survivorship agreement, Mrs. Steffens, as a matter of law was entitled to all or to only her community half of the building and loan shares.

The judgment attacked by petitioner is an "order approving final report of temporary administratrix, *ordering distribution* of *estate,* and terminating temporary administration." This order was entered in accordance with a statutory duty enjoined upon the probate court by Article 3641, Vernon's Ann. Texas Stats. (now Section 408 of the Probate Code) [1] which provides that:

"Upon a settlement of an estate, if there be any of the estate remaining in the hands of the executor and administrator, and the heirs, devisees or legatees of the estate, or their assignee, or either of them, are present or represented in court, the county judge shall order a partition and distribution of the estate to be made among them."

On its face, the order sought to be set aside by petitioner does not purport to be an agreed or consent judgment. It is recited therein that:

"[I]t further appearing to the court from the *evidence adduced* that all debts owed by and chargeable to the estate of the decedent herein, have been fully paid and discharged by the Temporary Administratrix that there is no further necessity for administration herein and that the *surviving heirs* of the decedent entitled to receive the remainder of the estate herein are Mrs. Edith T. Steffens, the widow and Harry S. Pollard, the son of C. Louis Steffens, deceased * * * and that the remaining estate in the hands of the Temporary Administratrix is subject to partition and distribution in accordance with the laws of descent and distribution of Texas, as modified by the express written directions of said decedent * * *.

"It is therefore Ordered, Adjudged and Decreed, by the Court that Mrs. Edith T. Steffens, the surviving widow, and Harry S.

---

1.—Section 408(b) of the 1955 Probate Code reads as follows:

"Distribution of Remaining Property. Upon final settlement of an estate, if there be any of such estate remaining in the hands of the personal representative, the court shall order that it be delivered, in case of a ward, to such ward or other person legally entitled thereto; in case of a decedent, that a partition and distribution be made among the persons entitled to receive such estate."

Pollard, the surviving son of C. Louis Steffens, deceased, be and each is hereby vested with title to the following property of said estate remaining in the hands of the Temporary Administratrix:

"To Mrs. Edith T. Steffens:

"* * * All United States Savings Bonds, Series E. payable to C. Louis Steffens or Mrs. Edith T. Steffens, and payable to Mrs. Edith T. Steffens as beneficiary;

"All Building and Loan Shares:

"The T E C C O Deposit in the name of C. Louis Steffens, with right of survivorship to Mrs. Edith T. Steffens in the amount of $1102.24 * * * .

"To Harry S. Pollard:

(Here follows description of property awarded to Pollard)."

Petitioner is a practicing attorney. The relations between him and his stepmother were normal and pleasant. Upon his father's death intestate, petitioner counseled with and assisted her in settling up the affairs of the estate. He prepared the papers incident to her appointment as temporary administratrix and her final report and account. He drew up the decree purporting to vest title and ordering distribution to Mrs. Steffens of all of the building and loan shares and the Federal Credit Union deposits and caused it to be entered by the probate court. It likewise distributed all of the remaining property of the estate, specifically mentioning and setting aside to Mrs. Steffens 17 other items of property and 16 items to the petitioner-son. That part awarded to him was of substantial value. Petitioner, before drawing up and consenting to the entry of the decree, was familiar with the decisions in the cases of Chandler v. Kountz, 130 S.W. 2d 327, wr. ref., and Shroff v. Deaton, 220 S.W. 2d 489. He says that it was not until three years later in 1956 that he became aware of this mistake, shortly before filing this bill, when the Dallas court handed down its decision in Reed v. Reed, supra, declining to follow Shroff v. Deaton and holding that such a survivorship agreement as we have here does not operate to vest title to all of the community interest in the survivor. Therefore, he contends that the decree should be set aside, the mistake corrected, and that he be awarded his father's community interest in these shares.

■ The following facts, among others, were found by the trial

court: That the building and loan shares were awarded to Mrs. Steffen as a result of a mutual mistake; that Mrs. Steffens has suffered no injury by the mistaken entry of the probate judgment and has all of the property intact; that the petitioner was not mistaken through negligence and relief is not barred by limitation or laches; that the judgment was entered by agreement and that the intention of the parties was that the estate be distributed according to the laws of descent and distribution.

The rule as stated in Freeman on Judgments, 5th Ed., Vol. 3, section 1246, thus:

"But in the absence of some element of fraud or misconduct on the part of the adverse party, equity will never interpose to vacate or enjoin a judgment on the ground of mistake or ignorance of law, nor because of a mistake of law cause by the opinions or suggestions of the judge before whom the cause was tried."

Similarly, in 49 C.J.S., Judgments, section 365, and to the same effect:

"It is not ground for relief in equity that the party was prevented from making his defense at law by a mistake of law, not induced by the fraud or misconduct of the other party, or by reason of mistaking or misunderstanding his rights in the premises."

In this case petitioner does not suggest that any fraud was practiced upon him or that he relied upon the respondent, that he was misled by her or that she had superior knowledge as to the law.

Petitioner does not disagree, we think, with the foregoing rule, but he says that he was mistaken with reference to his own antecedent and existing private legal rights as distinguished from a mistake of law generally, and that therein lies an exception to the rule. He relies on the statement in Pomeroy's Equity Jurisprudence, Vol. 3 (5th Ed.), section 849a, p. 311, as follows:

"Wherever a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights, interests, estates, duties, liabilities, or other relations, either of property or contract or personal *status*, and enters into some transaction the legal scope and operation of which he correctly apprehends and understands, for the purpose of affecting such assumed rights, interests, or relations, or of carrying out such assumed duties and

liabilities, equity will grant its relief, defensive or affirmative, treating the mistake as analogous to, if not identical with a mistake of fact. * * *"

The petitioner, from an examination of the decisions and the statutes, must have determined that he was barred from any claim of ownership in the building and loan shares. The effect of his contention now is that after satisfying himself as to the status of the law he agreed to the probate decree impliedly upon the condition that if a subsequent decision of the appellate courts determined the law to be otherwise he would not be bound by the probate decree and it would be subject to avoidance. We are of the opinion that this position is untenable.

■ A change in judicial interpretation or view of the applicable law after a final judgment, does not furnish a basis for a bill of review and the bestowal of equitable relief, nor can equity be invoked to set aside a contract consummated in reliance on the law as announced by a court decision on account of a subsequent contrary ruling. 19 Am. Jur., Equity, section 72, Vol. 3, Pomeroy's Equity Jurisprudence. 5th Ed., section 850a; Kenyon v. Welty, 20 Cal. 637, 81 Am. Dec. 137; Nilsson v. Krueger, 69 S.D. 312, 9 N.W. 2d 783; Sontag Chain Stores v. Superior Court, 18 Cal. 2d 92, 113 Pac. 2d 689.

Prior to the entry of the probate decree petitioner wrote a letter to Mrs. Steffens in which he conceded her right to all building and loan shares, but insisted that the title to one-half of certain United States co-owner series "E" bonds payable to C. Louis Steffens or Mrs. Steffens vested in him under the statutes of descent and distribution. In that letter he discusses the holdings in Chandler v. Kountz, Shroff v. Deaton and Edds v. Mitchell, 143 Texas 307, 184 S.W. 2d 823, as well as Decker v. Fowler, 199 Wash. 549, 92 Pac. 2d 254, 131 A.L.R. 961, and refers to certain United States Treasury regulations. He explained that in the Shroff case, the court held that the shares in a savings and loan association under a survivorship agreement similar to the one we have here, were owned by the survivor irrespective of the provisions of Art. 2580, Vernon's Ann. Civ. Stat., now section 46, Probate Code, V.A.T.S. Petitioner concluded his letter by saying:

"In each instance in which it is desired that the entire ownership of joint funds be vested in you as survivor, an explicit provision has been made to accomplish that purpose. Specifically, the TECCO deposit had a written agreement providing that you had the right of survivorship; the Building and Loan Association

savings shares specifically provided that you had the right of survivorship; one thousand ($1,000.00) dollars of the savings bonds specifically provided that the bonds were payable on death to you.

"Therefore, I remain confirmed in my conclusion that of the two thousand four hundred (2400.00) dollars of War Savings Bonds payable to C. Louis Steffens or Mrs. Edith T. Steffens, title to one-half belongs to you and title to the other one-half vests according to the Texas laws of descent and distribution."

Petitioner says in his testimony that at all times he believed that the building and loan shares belonged to Mrs. Steffens by virtue of the execution of the survivorship agreement and that the cases of Shroff v. Deaton and Chandler v. Kountz were cited by him only with respect to the ownership of United States bonds and were "not looked" up in the matter of the ownership of the building and loan shares at all. Only by implication do either of these cases have any bearing on the ownership of United States bonds. The Shroff case deals entirely with the question we have here, namely, the ownership of savings and loan shares under a similar survivorship agreement, while Edds v. Mitchell and Decker v. Fowler were concerned with the ownership of United States co-owner bonds. We think it cannot be said that the petitioner, with a thorough knowledge and understanding of the holding in the Shroff case, could have or did disregard it in arriving at the conclusion that Mrs. Steffens was entitled to be declared the owner of all of the building and loan shares, and that he considered it only in forming his opinion, that the United States bonds were owned one-half by him and one-half by Mrs. Steffens. The following testimony was given by the petitioner on cross-examination.

"Q. You, of course, were familiar with the case of—those two cases, the Shroff case and the Kountz case—

"A. Yes, sir.

"Q. You cited those in the letter you wrote to me and were familiar with the rulings, were you not?

"A. I mentioned them in the letter I wrote to her as well.

"Q. And you felt those cases were controlling at that time, did you not?

"A. Those cases were cited in relation to the matter of the

OR bonds; they were not cited or looked up in the matter of the building and loan stock at all."

Petitioner nowhere testifies that he did not rely on the Shroff case in drawing the conclusion that he owned no part of the building and loan shares and from all of the evidence we think the contrary is shown. He had no other basis for his legal opinion that the survivorship agreement was valid and enforceable.

■ Petitioner in his brief concedes: "Of course, if, in a litigated case, a decision and judgment are arrived at, that decision, right or wrong, becomes the law of the case, and no subsequent change in decisions of the court can affect that judgment." If petitioner is correct in that conclusion, and we think he is, then the question is foreclosed against him because a consent judgment has the same degree of finality and binding force as does one rendered by the court at the conclusion of an adversary proceeding. Harding v. W. L. Pearson & Co., 48 S.W. 2d 964 (Comm. App.). In the recently decided case of Wagner v. Warnasch, 156 Texas 334, 295 S.W. 2d 890, we said: "A judgment by consent is contractual in its nature and should be so construed, but it is more than a mere contract between the parties. We agree with the views expressed on this particular question in the dissenting opinion."[2] We further quoted with approval from 31 Am. Jur., Judgments, section 463, as follows: " 'The fact that a judgment is rendered by consent gives it neither less nor greater force or effect than it would have had it been rendered after protracted litigation, except to the extent that the consent excuses error and operates to end all controversy between the parties.' " See also Freeman on Judgments, Vol. 3, Section 1350.

The case of Ramsey v. McKamey, 137 Texas 91, 152 S.W. 2d 322, was a bill of review to set aside a judgment theretofore rendered in a partition suit. The mistake in that case was one of simple fact, namely, as to the extent of the acreage that was to be partitioned. It is elementary that the judgment in a partition suit does not operate as a conveyance or transfer of title. The partition is of the possession and not of the title. This decision seems to represent a narrow doctrine. The relief granted in that suit may be based on an equitable right to contribution generally accruing as a result of the failure of title to some part of the property partition, Ross v. Armstrong, 25 Texas Supl. 354, or an implied warranty arising by virtue of the statutory provision

2.—Warnasch v. Wagner, 291 S.W. 2d 389.

applicable to partition of real property. That decision should not be extended to control in the situation here.

Reverting to the statement of the rule in Pomeroy, relied upon by petitioner, that rule is clearly applicable to contractual relations. To the same effect is Restatement on Restitution, section 49 as follows: "A person is entitled to restitution from another to whom gratuitously and induced thereto by a mistake of law he has given land or other things or has surrendered a claim if the mistake (a) was caused by fraud or material misrepresentation, or (b) was as to the identity or relationship of the donee or was some other basic mistake, or * * *." But even granting that this doctrine may be generally applied in bill of review cases we think it is not available to petitioner under the facts disclosed in this record.

It is admitted in this case that there was on the part of Mrs. Steffens no fraud, deceit, no overreaching, no misleading conduct. Pollard was not mistaken in any true sense as to his "antecedent or existing private legal rights" or as to his "personal status." He knew the full extent of Mr. Steffens' property. He knew the exact amount of the building and loan shares. He knew the shares were purchased with community funds. He knew that he was entitled to one-half of all community property. He knew the exact wording of the agreement signed by Mr. and Mrs. Steffens when the shares were purchased. He was acquainted with the decisions in Chandler v. Kountz and Shroff v. Deaton. He knew that he was not entitled to any interest in the shares if the agreement was legally effective to create a joint tenancy with a right of survivorship. He knew that if the agreement was not so effective he was entitled to a one-half interest in the shares.

Petitioner cites and attaches considerable weight to Mortiz v. Horsman, 305 Mich. 627, 9 N.W. 2d 868, 147 A.L.R. 117. There the court and the administrator made a mistake of fact in assuming that one of the distributees was a natural rather than an adopted son, while the other distributees made a mistake of law in their assumption that their brother by adoption was entitled to share in the inheritance through his adoptive parent contrary to the Michigan law of descent and distribution. That court, in granting equitable relief from the probate decree and in allowing recovery from the distributee of the share of the estate awarded to him by mistake, held that equity would relieve the consequences of the mistake whether it be of law or of fact under the principle of equity that one should not be allowed to enrich himself unjustly at the expense of another on account of an innocent mis-

take entertained by both parties. Now, regardless of this Michigan decision and what is said to be the modern trend in granting relief whether the mistake be one of law or fact as asserted by some other court decisions and law writers,[3] petitioner cannot invoke the principles of equitable relief under the circumstances before us.

No comparable mistake of law was made in this case. Pollard did not mistakenly believe that a joint tenancy with a right of survivorship could be created by written instrument. It was settled in Chandler v. Kountz, with which he was familiar, that it could be. If he made any mistake at all, it was in believing that by signing the particular agreement before him Mr. and Mrs. Steffens had transmuted community funds into separate property of Mrs. Steffens in which he as an heir under the laws of descent and distribution would have no interest. There had been no final determination of that question in this state as he knew or should have known from a reading of the opinion in Shroff v. Deaton in which the discussion of the question was pure dicta and in which case no writ of error was applied for. He should have litigated the question at the time rather than join in having judgment entered against him and to become final before deciding to litigate it by bill of review.

The Texas decisions relied on by petitioner other than Ramsey v. McKamey are not concerned with setting aside judgments, but deal only with relief sought from overpayment caused by mistake of fact arising in matters of contract. Some of these are Empire Gas & Fuel Co. v. State, 21 S.W. 2d 376, affirmed 121 Texas 138, 47 S.W. 2d 265; Greene v. Robison, 117 Texas 516, 533, 8 S.W. 2d 655; Lusk v. Parmer, 114 S.W. 2d 677, er. dism.; Algelt v. Gerbic, 149 S.W. 233, er. ref., granting relief on account of ignorance or misapprehension concerning the legal effect of a transaction or legal rights where induced, procured, aided or accompanied by inequitable conduct of the other parties. Ferguson v. Mountz, 281 S.W. 616, er. dism., where the Pomeroy rule is quoted but relief from the mistake is granted because it was induced by counsel for the other party. Moore v. City of Beaumont, 146 Texas 46, 202 S.W. 2d 448; Wardlow v. Miller, 69 Texas 395, 6 S.W. 292; West v. West, 9 Texas Civ. App. 475, 29 S.W. 242, where relief was granted on account of a mistake of law which was due in part to the inequitable conduct of the defendant; Ramey v. Allison, 64 Texas 697, where there was also fraud inducing the mistake;

3.—Peter v. Peter, 343 Ill. 493, 175 N.E. 846, 75 A.L.R. 890; Peterson v. First Nat'l. Bank, 162 Minn. 369, 203 N.W. 53, 42 A.L.R. 1185; 9 Texas Law Review 309.

Columbian National Fire Ins. Co. et al v. Dixie Co-Op Mail Order House, 276 S.W. 219 (Comm. App.).

The rule applicable to bills of review is stated in United States v. Throckmorton (1878) 98 U.S. 61, 25 L. ed. 94:

"There are no maxims of the law more firmly established or of more value in the administration of justice than the two which are designed to prevent repeated litigation between the same parties in regard to the same subject of controvrsy, namely: Interest re ipublicae, ut sit finis litium, and Nemo bis vexari pro una et eadam causa. * * *

"But there is an admitted exception to this general rule, in cases where by reason of some thing done by the successful party to a suit, there was, in fact, no adversary trial or decision of the issue in the case. * * *."

■ Our conclusion is that a party to a legal proceeding should not be permitted to set aside a judicial judgment, in the absence of fraud, when he was in possession of all of the vital facts and acquainted with the law as of the time of the entry of that judgment, and permitted its rendition against him only because he misconstrued a written instrument that controlled his legal rights or misapprehended its operative effect on his legal rights and chose to forego his right to litigate the law question posed thereby.

The judgment of the Court of Civil Appeals is affirmed.

ASSOCIATE JUSTICE STEAKLEY not sitting.

Opinion delivered February 1, 1961.

Rehearing overruled March 8, 1961.

MR. JUSTICE NORVELL, concurring.

While I think that the judgment of the Court of Civil Appeals was correct and placed upon a proper basis, I feel that I am bound by the Court's decision in Hilley v. Hilley, 161 Texas 569, 342 S.W. 2d 565, despite my dissent thereto. However, I concur fully in the opinion prepared by Mr. Justice Culver and join in the action overruling the motion for rehearing.

Opinion delivered February 1, 1961.

Rehearing overruled March 8, 1961.