NO. 07-97-0347-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



DECEMBER 14, 1999



______________________________




RONNIE FREEMAN, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 96-422758; HONORABLE JIM BOB DARNELL, JUDGE



_______________________________



Before BOYD, C.J., and QUINN and REAVIS, JJ.

 Contending the trial court erred in 1) refusing to permit specific questions on voir dire, 2)
misdirecting the jury in the jury charge, and 3) improperly admitting evidence of a juvenile conviction,
appellant Ronnie Freemen challenges his conviction of first degree felony murder. The punishment
was assessed by the jury at life confinement in the Institutional Division of the Texas Department of
Criminal Justice. Finding merit in appellant's first contention, we reverse the trial court judgment and
remand the cause for retrial.

 The events giving rise to appellant's prosecution occurred on July 2, 1996. Appellant was
the father of two-week-old Draven Upton. When Draven was released from the hospital after his
birth, he was on an apnea monitor which would sound an alarm if the baby stopped breathing. On
the morning of July 2, 1996, Jennifer Upton, the baby's mother, placed the child in front of appellant
with the monitor attached. She asked appellant to watch the baby while she performed errands. In
the first of two statements given to police, appellant said that he had fallen asleep and, as he
awakened, he believed he "bumped into [Draven] or accidently hit him." Although the apnea monitor
did not activate, appellant said he noticed that Draven was not breathing and shook him in an effort
to stimulate breathing. About this time, Jennifer returned.

 When appellant told Jennifer that Draven was not breathing, she checked and he was alright. 
However, when the monitor went off, she started performing CPR and told appellant to call for help. 
Draven was taken to the hospital, where he later died.

 In his second statement given to the police, appellant said Draven began crying but when
appellant tried to feed him, Draven would not take the bottle or pacifier. He admitted striking Draven
on the side of his face. Draven stopped breathing briefly, but he asserted the child started breathing
again after appellant shook him not "very hard" shortly before Jennifer returned home.

 Appellant was charged by a two-count indictment containing multiple paragraphs. Count one
charged appellant with injury to a child. Count two alleged, in essence, that appellant 1) caused the
death of Draven Upton by committing an act clearly dangerous to human life by striking Draven
Upton, 2) in the course of committing the felony offense of injury to a child, appellant committed an
act clearly dangerous to human life by striking and shaking Draven Upton, thereby causing his death,
and 3) caused the death of Draven Upton by both striking and shaking him with the intent to cause
serious bodily injury. Each paragraph also contained an allegation that appellant's use of his hand
was the use and exhibition of a deadly weapon. Before trial, the State waived count one of the
indictment and proceeded to trial on the count two murder charge. The trial resulted in the verdict
and judgment giving rise to this appeal.

 The focal point of appellant's first point challenge is the refusal of the trial court to permit him
to question the jury panel about the possible effect the fact that the victim was a two-week-old child
might have on their verdict. The effect of this refusal, he argues, was to deny him the effective
assistance of counsel in violation of the Sixth and Fourteenth Amendments to the federal constitution
and Article 1, Section 10 of the Texas Constitution. It is undisputed that the standard of review in
considering trial court voir dire rulings is whether the trial court abused its discretion. See Nunfio
v. State, 808 S.W.2d 482, 484 (Tex.Crim.App. 1991). A voir dire question is proper if it seeks to
discover a juror's views on an issue applicable to the case. Id.

 In supporting his position that the question was proper, appellant cites Nunfio. In that case, 
defense counsel was prohibited from asking the jury panel whether they could be fair and impartial 
on the crime involved (aggravated sexual assault) if the victim had been a nun. Id. at 483. Holding
that the question was permissible in order to determine bias or prejudice in favor of the victim, the
Court of Criminal Appeals reversed the conviction in the case and remanded it for another trial. That
holding was in part based upon Abron v. State, 523 S.W.2d 405 (Tex.Crim.App. 1975), in which the
court found error in the trial court's refusal to allow defense counsel to inquire if it would make a
difference to potential jurors that the black defendant was accused of raping a white woman. In
Maddux v. State, 862 S.W.2d 590 (Tex.Crim.App. 1993), a case very similar to this one, the court
found the trial court reversibly erred in refusing to allow trial counsel to question the venire
concerning potential bias in favor of a child victim. Id. at 592.

 It is the rule that a question which is otherwise proper is not permissible if it seeks to commit
the venire members to a certain verdict on a particular set of facts. Maddux, 862 S.W.2d at 592
(citing Allridge v. State, 762 S.W.2d 146, 163-64 (Tex.Crim.App. 1988), cert. denied, 489 U.S.
1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989)); White v. State, 629 S.W.2d 701, 706 (Tex.Crim.
App.1981), cert. denied, 456 U.S. 938, 102 S.Ct. 1995, 72 L.Ed.2d 457 (1982); and Williams v.
State, 481 S.W.2d 119, 121 (Tex. Crim. App. 1972). In his concurring opinion in Raby v. State, 970
S.W.2d 1 (Tex. Crim. App. 1998), cert. denied, __U.S. ___, 119 S.Ct. 515, 142 L.Ed.2d 427 (1999),
Judge Baird sought to provide guidance for distinguishing between questions that merely seek to
ferret out bias and prejudice, and those tending to commit venire members to a particular finding or
verdict. Id. at 11. In his discussion, Judge Baird commented that, while there did not appear to be
a bright line rule, he saw three principles that emerged from cases discussing the question: 1) the
venire may not be asked what set of facts would result in a particular verdict, 2) there are no "magic
words" revealing a question as one seeking a commitment from venire members, and 3) fact specific
questions are not prohibited. Id. at 11-12. Although those comments were made in a concurring
opinion and by a judge no longer on the court, perusal of the cases he cites as authority for his
comment shows it to be worthy of serious consideration.

 In this case, the State argues that the proposed question was improper because it "was flat
out informing the jury of the victim's name and age" and "was asking the jury to commit the specific
facts of the case." It contends that Bailey v. State, 838 S.W.2d 919 (Tex.App.--Fort Worth 1992,
pet. ref'd), considered an analogous question and its decision is dispositive of appellant's first point
challenge. We disagree.

 Bailey, which was decided a year before Maddux and six years before Raby, involved a
prosecution for sexual assault of a child under two years of age. Defense counsel was not permitted
to ask: 

 Is there anybody who feels like they might not or could not be fair and give fair
consideration of a probated sentence if the evidence showed that the injured party was
at that time . . . between one and two years [of age]?


Id. at 920. In affirming the trial court ruling, the Bailey court reasoned that the question was
improper because, as did the question in White, it effectively sought to commit the venire to a
particular punishment finding before trial. Id. at 921-22.

 In contrast, the question in this case was much less specific, did not ask the panel about their
ability to reach a particular verdict, and therefore did not have any tendency to commit the panel to
any particular finding. As did the questions in Maddux and Nunfio, appellant's question merely
sought to determine if the members of the venire had any bias or prejudice in favor of the victim, and
did not ask if the venire members were able or willing to make any particular findings despite the
victim's age. In Maddux, the Court of Criminal Appeals specifically rejected the State's argument
that a question concerning the effect of the victim's age on venire members was an attempt to commit
them to particular findings. 862 S.W.2d at 592. The question before that court and the one before
us is analogous and its reasoning is applicable here. 

 In arguing the question was improper, the State places significant reliance upon the statement
in Bailey that "the question presents the venire with specific facts, the name and age of the victim." 
While it is true that questions with greater factual detail are more likely to be improper, that tendency
does not arise from the factual specificity per se. It arises because such questions may tend to commit
venire members to a particular verdict on the facts of the case they are about to hear, as contrasted
to a mere recital of a fact or facts involved in the case. It is because of this confusion that Judge
Baird, in his concurring opinion in Raby, opined that fact specific questions were not prohibited per
se.

 In considering the State's argument that the defense question was improper because it
mentioned the name of the victim, we note the holding in Etheridge v. State, 903 S.W.2d 1 (Tex.
Crim.App. 1994), cert. denied, 516 U.S. 920, 116 S.Ct. 314, 133 L.Ed.2d 217 (1995). In that case,
the court held that the trial court did not err in allowing the prosecution to use a chart during voir dire
showing the victim's name. Id. at 8. We do not believe that the use of the victim's age directly,
rather than stated as a part of a hypothetical question, carried any taint. This is particularly true here
when the victim's age was not a contested issue and one of the significant issues during voir dire was
whether the members of the venire were influenced by the substantial pretrial publicity given to the
case. (1) Suffice it to say that we find the question sought by appellant was proper and the trial court
erred in overruling it. Having made that decision, we must next decide if the question's exclusion 
mandates reversal.

 In Nunfio, the Court of Criminal Appeals held the denial of a proper question during voir dire
was not subject to harmless error analysis. However, in Cain v. State, 947 S.W.2d 262 (Tex.Crim.
App. 1997), the court held that except for certain constitutional errors "no error, whether it relates
to jurisdiction, voluntariness of a plea, or any other mandatory requirement, is categorically immune
to a harmless error analysis." Id. at 264. In doing so, however, the court noted that some errors
might defy analysis by harmless error standards or there might be insufficient information upon which
to conduct a meaningful harmless error analysis. Id. Indeed, while recognizing that some kinds of
errors would never be harmless under the applicable test, the court cautioned that appellate courts
should not automatically foreclose the application of the harmless error to certain categories. Id. For
example, in Cena v. State, 991 S.W.2d 283 (Tex.Crim.App. 1999), and Gonzales v. State, 994
S.W.2d 170, 171 (Tex.Crim.App. 1999), both of which involved error in limiting voir dire questions,
the court vacated judgments of the Courts of Appeals and remanded causes to them for the purpose
of conducting harmless error analyses.

 Rule 44.2 of the Texas Rules of Appellate Procedure sets out the standard by which we
determine if trial error requires reversal. It sets out two tests which depend on the type of error
committed. For constitutional error which is subject to harmless error review, an appellate court
must reverse "unless the court determines beyond a reasonable doubt that the error did not contribute
to the conviction or punishment." Tex. R. App. P. 44.2(a). For other types of errors reversal is not
required if the error does not "affect substantial rights." Tex. R. App. P. 44.2(b).

 The right to assistance of counsel and to trial by an impartial jury is guaranteed by the Sixth
Amendment to the Federal Constitution, made applicable to the states by the Fourteenth Amendment. 
A like guarantee is provided by the Texas Constitution in Article 1, Section 10 of that document. In
Linnell v. State, 935 S.W.2d 426, 428 (Tex.Crim.App. 1996), the court held that the right to the
assistance of counsel encompasses the right of counsel to question the members of the jury panel in
order to intelligently exercise peremptory challenges. See also Shipley v. State, 790 S.W.2d 604,
607-08 (Tex.Crim.App. 1990); S.D.G. v. State, 936 S.W.2d 371, 380 (Tex.App.--Houston [14th
Dist.] 1996, pet. denied). Thus, because appellant's complaint implicates his constitutional right to
an impartial jury, we must reverse unless we can determine beyond a reasonable doubt that the error
did not contribute to his conviction or punishment. 

 In contending that the "substantial right" test rather than the constitutional error test is
applicable, the State cites and relies upon Jones v. State, 982 S.W.2d 386 (Tex.Crim.App. 1998). 
However, that case involved trial court error in sustaining the State's challenge based upon a
provision of the Code of Criminal Procedure. Because the error was premised on misapplication of
a statute, the court characterized it as non-constitutional error. Id. at 391. It went on to hold that
as long as the members of the resulting jury are impartial and otherwise qualified, the exclusion of
another qualified panel member did not affect a substantial right of the defendant. Id. at 393-94.

 In this case, unlike Jones, the asserted error does not involve the mere violation of a statute,
but goes to appellant's right to a fair and impartial jury and the effective assistance of counsel. 
Because counsel was not able to inquire into the venire's potential bias on matters relevant to the
case, we cannot know if the members of the selected jury were impartial. Indeed, in the recent
decision of Gonzales v. State, No. 06-97-0121-CR (Tex.App.--Texarkana Aug. 31, 1999, no pet. h.),
our sister court considered the effect of the denial of proper voir dire questions. It observed:

 When an error occurs in the questioning that resulted in the selection of the jury, there
is a probability that the error will skew every act taken by counsel in connection with
the denied questions because counsel has been improperly denied the right to have any
insight into the juror's reaction to that area.


Because it felt it was impossible to determine how the denial of proper questions affected trial
counsel's ability to select an impartial jury and his presentation of his case, the Gonzales court held
the error was of constitutional dimension and was not harmless. 

 Rule 44.2(a) does not permit us to find an error harmless based upon our speculation or
conjecture. There is nothing in this record to support a conclusion that, beyond a reasonable doubt,
the limitation on appellant's ability to question the jury did not contribute to his conviction or
sentence. That being true, we sustain appellant's first point. Because that action requires the reversal
of the judgment of the trial court and the remand of the cause for retrial, it is not necessary to discuss
the remainder of appellant's points.

 Accordingly, the judgment of the trial court is reversed and the cause remanded for retrial. 


 John T. Boyd

 Chief Justice


Do not publish.


1. We also note that the State questioned the venire members if they were able to give a
defendant who "might be 17" a life sentence. It would appear that this question had a greater
tendency to commit the venire to a particular question than that which the defense sought to ask.



ion for summary judgment. In the Final Summary Judgment, Judge Windle
granted the State’s motion for summary judgment and denied Capps’s motion for summary
judgment without specifying the grounds upon which the judgment was based. 
Discussion
          Capps contends the trial court abused its discretion when it rendered summary
judgment in favor of the State. We disagree. 
           I.        Standard of Review
          In reviewing a summary judgment, this Court must apply well-established standards
which are: (1) the movant for summary judgment has the burden of showing that there is
no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) 
in deciding whether there is a disputed material fact issue precluding summary judgment,
evidence favorable to the non-movant will be taken as true; and (3) every reasonable
inference must be indulged in favor of the non-movant and any doubts resolved in its favor. 
Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997) (citing Nixon v. Mr. Prop.
Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985)). We review the trial court’s summary
judgment de novo. Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). 
          Furthermore, when the motion for summary judgment is based on several different
grounds and the order granting summary judgment does not specify or state the grounds
relied on, the summary judgment will be affirmed on appeal if any of the grounds presented
in the motion are meritorious. Western Investments, Inc. v. Urena, 162 S.W.3d 547, 550
(Tex. 2005); Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989).
          For a party to prevail on a motion for summary judgment, that party must
conclusively establish the absence of any genuine question of material fact and that he is
entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); Browning v. Prostok, 165
S.W.3d 336, 344 (Tex. 2005). To establish entitlement to judgment as a matter of law, a
movant must either prove all essential elements of his claim or defense, MMP, Ltd. v.
Jones, 710 S.W.2d 59, 60 (Tex. 1986), or negate at least one essential element of the non-movant's cause of action. Shaw v. Moss, 67 S.W.3d 836, 842 (Tex. 2001); Randall's
Food Mkts, Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995). Once the movant has
established a right to summary judgment, the non-movant has the burden to respond to
the motion for summary judgment and present to the trial court any issues that would
preclude summary judgment. City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 
671, 678 (Tex. 1979); Barbouti v. Hearst Corp., 927 S.W.2d 37, 64 (Tex.App.–Houston
[1st Dist.] 1996, writ denied). 
          II.       Bill of Review
          Because they involve the same claim or cause of action, we analyze Santa Cruz’s
original petition and petition for bill of review together. A bill of review is an equitable
proceeding to set aside a judgment that is not void on its face but can no longer be
challenged by motion for new trial or appeal. Caldwell v. Barnes, 154 S.W.3d 93, 96 (Tex.
2004); King Ranch Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003), cert. denied, 541
U.S. 1030, 124 S.Ct. 2097, 158 L.Ed.2d 711 (2004). The fact that an injustice has
occurred is not sufficient to justify bill of review relief. Wembley Inv. Co. v. Herrera, 11
S.W.3d 924, 927 (Tex. 1999). A bill of review is designed to prevent manifest injustice. 
Alexander v. Hagedorn, 148 Tex. 565, 226 S.W.2d 996, 998 (1950).
          To prevail on his bill of review, Santa Cruz was required to plead and prove (1) a
meritorious claim or defense to the underlying cause of action, (2) that he was prevented
from making due to the fraud, accident or wrongful act of his opponent, and (3) that he was
not at fault or negligent.


 Caldwell, 154 S.W.3d at 96; Hagedorn, 226 S.W.2d at 998. This
preliminary showing of entitlement is essential in order to assure that valuable judicial
resources will not be wasted by conducting a spurious “full-blown” examination on the
merits. Baker v. Goldsmith, 582 S.W.2d 404, 408 (Tex. 1979). 
          In the context of a bill of review, a defendant is entitled to a summary judgment
against the proponent of the bill of review if he can establish, as a matter of law, the
absence of any of these three elements. Hartsfield v. Wisdom, 843 S.W.2d 221, 223
(Tex.App.–Amarillo 1992, pet. denied) (citing Montgomery v. Kennedy, 669 S.W.2d 309,
311-12 (Tex. 1984)). Appellee contends the trial court did not err in granting its’ motion for
summary judgment, or in denying Santa Cruz’s motion for summary judgment, because
Santa Cruz cannot establish, as a matter of law, at least one essential element of his
cause of action. See Shaw v. Moss, 67 S.W.3d at 842.
          A.       Meritorious Claim of Defense
          For purposes of our analysis we will assume, without finding, that Capps has plead
a meritorious defense to the underlying cause of action and has raised, by competent
summary judgment evidence, more than a scintilla of evidence to prove those allegations.
          B.       Fraud, Accident or Wrongful Act
          In addition to a meritorious defense, Santa Cruz must also establish that he was
prevented from making that defense by the fraud, accident or wrongful act of the Appellee. 
Furthermore, that fraud must be extrinsic fraud, as opposed to intrinsic fraud, in order to
prevail on his petition for bill of review. King Ranch, 118 S.W.3d at 752; Tice v. City of
Pasadena, 767 S.W.2d 700, 702 (Tex. 1989). Extrinsic fraud “is fraud that denie[s] a party
the opportunity to fully litigate at trial all the rights and defenses that could have been
asserted,” King Ranch, 118 S.W.3d at 752, and includes “wrongful conduct practiced
outside the adversary trial–such as keeping a party away from court, making false
promises of compromise, denying a party knowledge of the suit–that affects the manner
in which the judgment is procured.“ Ince v. Ince, 58 S.W.3d 187, 190 (Tex.App.–Waco
2001, no pet.) (citing Hagedorn, 226 S.W.2d at 1002). Extrinsic fraud is “collateral” fraud
in the sense that it must be “collateral” to the matter actually tried and not something which
was actually or potentially in issue in the trial. Montgomery, 669 S.W.2d at 312. 
          In contrast, intrinsic fraud “relates to the merits of the issues which were presented
and presumably were or should have been settled in the former action.” Tice, 767 S.W.2d
at 702. Intrinsic fraud “is inherent in the matter considered and determined in the trial
where the fraudulent acts pertain to an issue involved in the original action, or where the
acts constituting the fraud were, or could have been litigated there.” Montgomery, 669
S.W.2d at 313. 
          Here, Capps seeks to set aside an agreed judgment on the State’s claim for costs
related to Santa Cruz’s support, maintenance, and treatment incurred in 1997. As such,
the agreed judgment represents a judgment on the merits of the State’s claim and is
“conclusive, not only on matters actually litigated, but it is also conclusive on every other
matter that could have been litigated and decided as an incident to or essentially
connected with the subject matter of the prior litigation.” Freeman v. Cherokee Water Co.,
11 S.W.3d 480, 483 (Tex.App.–Texarkana 2000, no pet.). Further, agreed judgments are
contracts that end all controversy between the parties. Pate v. Pate, 874 S.W.2d 186, 188
(Tex.App.–Houston [14th Dist.] 1994, writ denied). Thus, intrinsic fraud, here, would
encompass any legal claim or defense available to Capps including any alleged fraud by
the State that pertained to any issue related to the State’s claim for reimbursement that
was, or could have been litigated, in the State’s claim proceeding. 
          Before and after the State initiated its claim, Capps contends the State misled
and/or failed to advise either Santa Cruz or himself of the availability of trust fund accounts
and/or other safekeeping procedures which, if implemented, might have sheltered a
substantial portion of Santa Cruz’s estate from the State’s claim. Specifically, Capps
asserts that the State miscalculated Santa Cruz’s monthly fee for 1997, failed to give Santa
Cruz notice of the 1997 fee increase, and failed to advise Capps that $50,000 of Santa
Cruz’s estate could have been exempt from claims for reimbursement under section
552.018 of the Texas Health & Safety Code if the funds had been placed in a trust. 
Whether the State’s claim was subject to reduction or elimination due to a miscalculation,
failure to give notice of a fee change, or failure to inform Capps of a statutory trust
exemption goes to the very essence of the validity and/or amount of the State’s claim. 
These issues could have been litigated in the State’s original claim proceeding. As such,
Capps alleges intrinsic fraud as opposed to extrinsic fraud. See, e.g., In re the Office of
the Attorney General, 193 S.W.3d 690, 693 (Tex.App.–Beaumont 2006, no pet.); McIntyre
v. Wilson, 50 S.W.3d 674, 680 (Tex.App.–Dallas 2001, pet. denied). 
          Capps also claims the State owed Santa Cruz and/or Capps a fiduciary duty as
Santa Cruz’s caretaker and breached that duty by failing to advise Capps of a change in
Santa Cruz’s monthly fee or his legal rights regarding a possible trust exemption. In Texas,
the law recognizes that there is no duty to inform others of the requirements of the law
because all persons are presumed to know the law. E. H. Stafford Mfg. Co. v. Wichita
School Supply, Co., 112 Tex. 650, 23 S.W.2d 695, 697 (1930). Nevertheless, if the State
had any duty to advise Santa Cruz or Capps pursuant to an existing fiduciary relationship
and failed in that duty, the breach of such a duty could have been alleged and litigated in
the State’s claim proceeding. Thus, these claims are also intrinsic fraud allegations. 
Because Capps could have litigated these claims in the original action, the agreed
judgment is res judicata as to all these claims. See Igal v. Brightstar Information
Technology Group, Inc., 250 S.W.3d 78, 86 (Tex. 2008); Barr v. Resolution Trust Corp.,
837 S.W.2d 627, 628 (Tex. 1992). 
          After Capps was appointed guardian and the State filed its certified claim, Capps
asserts State representatives informed him on several occasions that he could do nothing
to prevent VSH from seeking reimbursement from Santa Cruz’s earnings and they were
unaware of any defenses to the State’s claim. After Capps’s appointment and the State
initiated an adversarial proceeding against Santa Cruz’s estate, no fiduciary relationship
existed between the State and Capps that required the State to give Capps legal advice
on how to defend against the State’s claim and/or shelter Santa Cruz’s assets. See Taub
v. Houston Pipeline Co., 75 S.W.3d 606, 622 (Tex.App.–Texarkana 2002, pet. denied). 
Moreover, the State representatives’ statements to Capps to the effect that he could do
nothing to prevent VSH from seeking reimbursement from Santa Cruz’s earnings or that
they were unaware of any defenses to the State’s claim were, at most, legal opinions–not
fraudulent misrepresentations. See Taub, 75 S.W.3d at 621-22. As such, the statements
are not actionable. Id. 
          Capps does not assert, and the record does not support, any allegation that he was
denied an opportunity to investigate any facts related to the amount or validity of the
State’s claim. Rather, Capps contends simply that the State failed to give him certain legal
advice. As guardian and attorney for the estate,


 see Insurance Company of North
America v. Westergren, 794 S.W.2d 812, 814-15 (Tex.App.–Corpus Christi 1990, orig.
proceeding [leave denied]), Capps was equally or, in most cases, better versed in the law
than the State representatives with whom he spoke and certainly more qualified and
motivated to undertake legal research to determine the defenses available to his ward and
client. 
          Santa Cruz’s reliance on Jones v. Texas Department of Protective and Regulatory
Services, 85 S.W.3d 483 (Tex.App.–Austin 2002, pet. denied) is inapposite. In Jones,
petitioner sought a bill of review and alleged she involuntarily signed an affidavit
relinquishing her parental rights because of representations by state representatives that,
if she did sign, her daughter would be placed with her cousin. Id. at 492-93. Her attorney
was not present when she signed the affidavit. Id. Subsequently, her daughter was not
placed with her cousin but in foster care. 85 S.W.3d at 486. Here, the State made no
misrepresentations of fact to either Santa Cruz or Capps and Santa Cruz’s interests were
represented by his guardian and attorney, Capps, and a second attorney, Yandell, at the
signing of the agreed judgment. 
           Intrinsic issues underlying a judgment attacked by a bill of review have no probative
value on the type of fraud necessary to support a bill of review, King Ranch, 118 S.W.3d
at 752, because each party must guard against adverse findings on issues directly
presented for decision. See Boaz v. Boaz, 221 S.W.3d 126, 131 (Tex.App.–Houston [1st
Dist.] 2006, no pet.). At most, Capps’s allegations assert intrinsic fraud. As such, Capps
should have “litigated the question[s] at the time rather than join in having judgment
entered against him and [permitting it] to become final before deciding to litigate it by bill
of review.” McIntyre, 50 S.W.3d at 694 (quoting Pollard v. Steffens, 161 Tex. 594, 343
S.W.2d 234, 240 (1961)). Accordingly, because Capps does not allege extrinsic fraud but
rather only argues intrinsic fraud, as a matter of law, he cannot successfully maintain a bill
of review on these grounds. 
          C.       Negligence
          Having concluded that Santa Cruz was not prevented from asserting a defense by
extrinsic fraud, we need not decide whether his petition seeking to set aside the agreed
judgment also fails to demonstrate that he is without fault or neglect. 
Conclusion
          Capps had the burden of proof on the issue of extrinsic fraud and his failure to make
a prima facie case defeats his action for a bill of review. Capps’s issues are overruled and
the trial court’s judgment is affirmed.




                                                                                      Patrick A. Pirtle

                                                                                            Justice