NUMBER 13-09-00563-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


PATRICIA M. JOHNSON, Appellant,


v.


WAYNE VENTLING, Appellee.

 




On appeal from the 94th District Court 
of Nueces County, Texas.

 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Yañez and Garza


Memorandum Opinion by Justice Garza



 Appellant, Patricia M. Johnson, challenges the trial court's denial of her motion to
enforce contractual alimony provisions agreed to by appellee, Wayne Ventling. By two
issues, Johnson contends: (1) that the trial court erred in determining that the contractual
alimony provisions were unenforceable; and (2) that she is entitled to a judgment of
$142,500, representing the amount of alimony alleged to be due from Ventling, as well as
interest and attorney's fees. We reverse and remand.

I. Background

 This case involves a thirteen-year romantic relationship which devolved into a
fifteen-year series of legal liaisons. Johnson and Ventling cohabited from 1982 to 1995. 
Following the advice of his attorney that a common-law marriage existed and that a formal
decree regarding property division was in his best interest, Ventling filed for divorce. The
parties consented to the terms of the divorce and a "Final Decree of Divorce" was entered
on April 13, 1995. The decree stated that "the relationship between [Ventling] and
[Johnson] is dissolved" and provided for the disposition of the parties' community property,
including a lump sum payment to be made from Ventling to Johnson in the amount of
$25,537. The decree, which was signed by the trial court as well as both parties and their
attorneys, (1) further stated as follows:

Alimony


 It is the mutual desire of the parties to provide a continuing measure
of support for [Johnson] after the dissolution of the relationship between the
parties. These support payments undertaken by [Ventling] are intended to
qualify as contractual alimony as that term is defined in section 71(a) of the
Internal Revenue Code of 1986 ("the Code"), as amended, and are intended
to be includable in the gross income of [Johnson] under section 71(a) of the
Code and deductible by [Ventling] under section 215(a) of the Code. All
provisions of this article will be interpreted in a manner consistent with that
intention.


 Contractual Obligations


 This alimony obligation undertaken by [Ventling] is contractual in
nature and is not an obligation imposed by order or decree of court.


 Terms, Conditions, and Contingencies


 Amount. [Ventling] will pay to [Johnson] $2,500.00 per month as and
for alimony.


 . . . .


 Term. The payments will be for eighty-four (84) months with the last
payment being March 1, 2002.


 . . . .


 Default and Acceleration. [Ventling] agrees that time is of the essence
in the payment of the periodic alimony payments. If default is made by
[Ventling] in the prompt payment of any periodic amounts due under the
terms of this agreement and such default continues for a period of more than
60 days, the entire remaining alimony obligation of [Ventling], at the option
of [Johnson], shall then be accelerated and shall become immediately due
and payable, together with an amount sufficient to reimburse [Johnson] for
any tax and/or penalty resulting from such default by [Ventling].


 . . . .


Clarifying Orders


 Without affecting the finality of this Decree of Divorce, this Court
expressly reserves the right to make orders necessary to clarify and enforce
this decree.


 In October of 1995, Johnson filed a motion for enforcement, contending that
Ventling failed to deliver certain community property to her as provided in the decree. In
response, Ventling filed a cross-motion for enforcement. The parties settled this dispute. 
Johnson then filed a second motion for enforcement in September of 1997, alleging that
Ventling had (1) failed to make the $25,537 lump sum payment as required by the decree,
and (2) failed to make the last three alimony payments. Johnson sought acceleration of
the entire alimony amount as provided in the decree. In response to this second
enforcement motion, Ventling raised a novel defense, arguing that the parties had in fact
never been married. Contending that Johnson had deceived him into believing that they
were in a common-law marriage, Ventling asked the trial court to: (1) vacate the 1995
decree; (2) rescind the parties' agreement "on the grounds of mistake, accident, fraud,
laches, limitations, and failure of consideration"; and (3) "non-suit" his divorce action. 
Although more than two years had passed since the trial court's entry of the final decree,
Ventling asserted that the trial court retained plenary power to vacate the decree because,
assuming the parties were never actually married, the decree merely stated the parties'
rights as to their jointly-owned property and was not a final judgment completely disposing
of his divorce action. See Tex. Prop. & Cas. Ins. Guar. Ass'n v. De Los Santos, 47 S.W.3d
584, 587 (Tex. App.-Corpus Christi 2001, no pet.) ("A judgment which settles all the legal
issues and rights between the parties is final and appealable.") (citing Hinde v. Hinde, 701
S.W.2d 637, 639 (Tex. 1985) (per curiam)).

 Johnson later moved for summary judgment on her enforcement motion. In arguing
the motion before the trial court, Johnson's attorney announced that the parties had
stipulated that they were, in fact, never married. (2) Ventling stipulated that he, in fact, had
not made the payments as required by the 1995 decree. The trial court then denied
Johnson's motion for summary judgment, granted Ventling's request to "non-suit" the
divorce action, and authorized Johnson to amend her pleadings. Johnson did so, alleging
that the parties were involved in a "domestic partnership" for thirteen years and asking the
trial court to enforce the community property disposition as provided in the 1995 decree.

 Following various continuances and delays, the parties returned to the trial court for
a hearing on March 16, 2001. At that time, Ventling reiterated his position that Johnson
had fraudulently induced him into believing that they were married and that, but for this
inducement, he would not have agreed to the terms of the 1995 decree. In an order dated
July 25, 2001, the trial court concluded that "the agreed judgment remains interlocutory,"
vacated the 1995 decree "pursuant to the Court's continuing plenary power," and
dismissed the case by approving Ventling's "non-suit" of the divorce action. The trial court
also awarded attorney's fees to Ventling. (3)

 Johnson appealed this judgment, and we concluded that the trial court lacked
jurisdiction to vacate the 1995 decree. Johnson v. Ventling, 132 S.W.3d 173, 179 (Tex.
App.-Corpus Christi 2004, no pet.). Although the parties agreed that they were never
married, we nevertheless held that the 1995 decree "was a final divorce judgment and not
interlocutory at the time the trial court signed the 2001 judgment." Id. at 178. Because the
decree was a final judgment, the trial court's plenary jurisdiction to vacate the decree
expired thirty days after it was signed. Id.; see Tex. R. Civ. P. 329b(d). We further
concluded that "the decree contained findings sufficient to establish the jurisdictional basis
for a valid judgment," and therefore, "the decree is not void and may not be collaterally
attacked." Johnson, 132 S.W.3d at 178 (citing Reiss v. Reiss, 118 S.W.3d 439, 443 (Tex.
2003) ("In general, as long as the court entering a judgment has jurisdiction of the parties
and the subject matter and does not act outside its capacity as a court, the judgment is not
void."); Toles v. Toles, 113 S.W.3d 899, 914 (Tex. App.-Dallas 2003, pet. denied)). 
Because the trial court had no jurisdiction to sign the 2001 judgment vacating the 1995
decree, we dismissed the appeal for want of jurisdiction. Id. at 179.

 Johnson then instituted proceedings in Iowa, where Ventling resided, seeking to
domesticate the 1995 decree and enforce the alimony provisions in that state. In an order
dated January 30, 2007, the Iowa court allowed enforcement of the $25,537 lump sum
property division payment but disallowed enforcement of the contractual alimony
provisions, noting that the obligations expressed therein did not constitute a "judgment"
enforceable in Iowa. Johnson then returned to Texas in an effort to secure such a
judgment. Specifically, Johnson sought a judgment for the total amount of Ventling's
alimony obligations, accelerated according to the terms of the decree, as well as damages
for adverse tax consequences and attorney's fees. In response, Ventling again asserted
defenses of fraud, accident, mistake, estoppel, illegality, res judicata, statute of limitations,
failure of consideration, and statute of frauds. On June 16, 2009, the trial court rendered
judgment in favor of Ventling, denying all relief requested by Johnson. (4) The trial court
subsequently entered the following findings of fact and conclusions of law:

Findings of Fact


1. On April 13, 1995, the Trial Court signed a final judgment in the above
entitled and numbered cause;


2. The final judgment included a separate provision that Wayne Ventling
pay Patricia M. Johnson spousal alimony in the amount of $2,500.00
per month for a term of 84 months;


3. On September 26, 1997, Patricia Johnson filed a Motion to Enforce
the judgment, alleging a failure by Wayne Ventling to pay money due
her in the April 13, 1995 judgment, and a failure to make spousal
alimony payments;


4. An Answer to the enforcement suit was filed by Wayne Ventling, in
which affirmative defenses were raised;


5. No jury was demanded by either party, and all matters of fact and of
law were submitted to the Trial Court for resolution.


6. The alimony provision of the final decree of divorce signed April 13,
2005, as stated in the decree on page 7, was intended to qualify as
contractual alimony as that term was defined in section 71(a) of the
Internal Revenue Code of 1986.


Conclusions of Law


7. Texas Family Code Chapter 9 provides that a party affected by a
decree of divorce providing for a division of property "as provided by
Chapter 7" may request enforcement of that decree.


8. Chapter 7 of the Texas Family Code allows a trial court, in a decree
of divorce, to order a division of the estate of the parties.


9. As the [sic] Patricia M. Johnson has openly confessed that the parties
were never married, and were never divorced, whatever property or
property rights which may have been acquired or accumulated by or
between them prior to April 13, 1995, was not community property.


10. On the date this court's final judgment was signed in this case, April
13, 1995, a trial court judgment or court order judicially imposing the
payment of spousal alimony was void because alimony, as defined in
26 United States Code 71, requires the existence of a marriage. The
provisions within the 1995 Decree pertaining to alimony are therefore
not enforceable.


11. Patricia Johnson's motions to enforce the Decree and her request for
judgment on the balance she alleges is due for alimony payments
under the Decree must be denied.


12. Patricia Johnson's Declaratory Judgment Action seeking a declaration
that she is entitled to alimony under the 1995 Decree must be denied.


13. Patricia Johnson's claims for attorneys fees are denied.


14. Patricia Johnson's claim for post judgment interest is denied.


This appeal followed. (5)

II. Discussion

 On appeal, Johnson argues by two issues that the trial court erred in denying her
motion to enforce the contractual alimony provisions of the 1995 decree. (6) By her first
issue, Johnson claims that the trial court erred because: (1) our decision in 2004 is the
"law of the case" and contradicts the trial court's ruling; (2) Ventling's affirmative defenses
to Johnson's enforcement action amounted to an impermissible collateral attack on the
1995 decree; (3) any "irregularity" in the 1995 decree "regarding the parties' pleaded
common law marital status would at most make the judgment voidable" and therefore not
vulnerable to collateral attack; and (4) the trial court "had a duty to exercise its inherent
power to enforce the terms" of the decree. By her second issue, Johnson argues that,
because the contractual alimony provisions are in fact enforceable, she is entitled to a
judgment of $142,500, representing the payments due from Ventling, as well as interest
and attorney's fees.

1. Standard of Review

 On appeal, a trial court's conclusions of law are reviewed de novo and will be
reversed only if they are erroneous as a matter of law. (7) Villagomez v. Rockwood
Specialties, Inc., 210 S.W.3d 720, 727, 728 (Tex. App.-Corpus Christi 2006, pet. denied)
(citing Stable Energy, L.P. v. Newberry, 999 S.W.2d 538, 547 (Tex. App.-Austin 1999, pet.
denied); Hofland v. Fireman's Fund Ins. Co., 907 S.W.2d 597, 599 (Tex. App.-Corpus
Christi 1995, no writ)). We will uphold the trial court's conclusions upon any legal theory
supported by the evidence. BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 794
(Tex. 2002); Waggoner v. Morrow, 932 S.W.2d 627, 631 (Tex. App.-Houston [1st Dist.]
1996, no writ).

2. Applicable Law

 Unlike other forms of spousal maintenance, contractual alimony is not void as being
in violation of state public policy. Birdwell v. Birdwell, 819 S.W.2d 223, 225-27 (Tex.
App.-Fort Worth 1991, pet. denied); see Francis v. Francis, 412 S.W.2d 29, 32-33 (Tex.
1967) (holding that permanent alimony contravenes the public policy of the state). (8) 
Instead, "an assumed obligation for spousal support is properly characterized as a
contractual duty having 'whatever legal force the law of contracts will give to it.'" Woolam
v. Tussing, 54 S.W.3d 442, 447 (Tex. App.-Corpus Christi 2001, no pet.) (quoting Francis,
412 S.W.2d at 31). When an agreement for the payment of alimony is executed by the
parties and incorporated into the judgment of divorce, it is binding on the parties and is
interpreted under general contract law. Schwartz v. Schwartz, 247 S.W.3d 804, 806 (Tex.
App.-Dallas 2008, no pet.) (citing O'Benar v. O'Benar, 410 S.W.2d 214, 217 (Tex. Civ.
App.-Dallas 1968, writ dism'd); Vickers v. Vickers, 553 S.W.2d 768, 769-70 (Tex. Civ.
App.-Beaumont 1977, no writ); Pollard v. Steffens, 161 Tex. 594, 602, 343 S.W.2d 234,
239 (1961)). Further, a party's signature approving the contents of an agreed divorce
decree has been found to be a binding attestation of that party's agreement to contractual
support provisions, even in the absence of a separate written support agreement. See
Rousseau v. Rousseau Sprecher, 843 S.W.2d 300, 301 (Tex. App.-Houston [14th Dist.]
1992, no writ) (requirement that agreement for contractual alimony must be in writing is
satisfied if divorce decree specifies terms of agreement and parties sign divorce decree);
Mackey v. Mackey, 721 S.W.2d 575, 579 (Tex. App.-Corpus Christi 1986, no writ)
(rejecting the argument that a party's approval of the form and content of an agreed
divorce decree was merely consent to entry of the decree and not execution of the
contract). "As with any other contract, absent consent of the parties, the provisions of the
agreement will not be modified or set aside except for fraud, accident or mutual mistake
of fact." Schwartz, 247 S.W.3d 804 (citing Boyd v. Boyd, 545 S.W.2d 520, 523 (Tex. Civ.
App.-Houston [1st Dist.] 1976, no writ)).

 In general, a judgment rendered by consent has the same force as a judgment
entered after protracted litigation, except "to the extent that the consent excuses error and
operates to end all controversy between the parties." Birdwell, 819 S.W.2d at 226 (citing
McCray v. McCray, 584 S.W.2d 279 (Tex. 1979); Wagner v. Warnasch, 156 Tex. 334, 295
S.W.2d 890, 892 (1956)). "Thus, in suits to enforce agreed judgments, parties may not
raise contractual defenses because such defenses constitute impermissible collateral
attacks on the prior judgments." Id. at 226-27 (quoting Ex parte Gorena, 595 S.W.2d 841,
844 (Tex. 1979)); see Chess v. Chess, 627 S.W.2d 513, 516 (Tex. App.-Corpus Christi
1982, no writ).

3. Analysis

 We agree in part with Johnson's argument that our 2004 opinion is the "law of the
case" and contradicts the judgment on appeal. Under the "law of the case" doctrine,
questions of law decided on appeal to a court of last resort will govern the case throughout
its subsequent stages. Loram Maint. of Way, Inc. v. Ianni, 210 S.W.3d 593, 596 (Tex.
2006) (citing Hudson v. Wakefield, 711 S.W.2d 628, 630 (Tex. 1986)). By narrowing the
issues in successive stages of the litigation, the doctrine is intended to achieve uniformity
of decision as well as judicial economy and efficiency. Briscoe v. Goodman Corp., 102
S.W.3d 714, 716 (Tex. 2003). As noted, in 2004 we concluded that the 1995 decree was
a final divorce judgment, is "not void," and "may not be collaterally attacked." Johnson, 132
S.W.3d at 178 (citing Putegnat v. Putegnat, 706 S.W.2d 702, 703-04 (Tex. App.-Corpus
Christi 1986, no writ) ("It is well established in Texas that a divorce judgment, unappealed,
and regular on its face, is not subject to a collateral attack in a subsequent suit.")). The law
of the case doctrine precludes us from reconsidering these issues. See id. Johnson
contends that, because of this, the trial court was compelled to enforce the contractual
alimony provisions contained in the 1995 decree.

 In response, Ventling sets forth several arguments. First, he claims that the
contractual alimony provisions were "not part of the decree" and "expressly not part of any
judgment," citing the language in the decree stating that the alimony obligation "is
contractual in nature and is not an obligation imposed by order or decree of court." We
disagree. It is true that the alimony obligation is contractual in nature; the court did not
have the authority to impose alimony obligations without the parties' consent. See Francis,
412 S.W.2d at 32-33. However, the alimony terms were set forth entirely within the order,
which was entitled "Final Decree of Divorce" and which was signed by the trial court as well
as the parties and their attorneys. The fact that the decree stated that the alimony
obligation is not "imposed by order or decree of court" does not alter the fact that the terms
were agreed to by the parties and approved by the trial court, as evidenced by its
signature. Because the contractual alimony terms were incorporated into the judgment of
divorce, they are binding on the parties. Schwartz, 247 S.W.3d at 806 (citing O'Benar, 410
S.W.2d at 217; Vickers, 553 S.W.2d at 769-70; Pollard, 161 Tex. at 602, 343 S.W.2d at
239).

 Ventling asserts further that "the non-existence of a marriage prevents a party from
filing a motion to enforce [contractual alimony] because there is no division of a marital
estate to enforce." However, Ventling does not direct us to any authority supporting this
point other than the trial court's 2001 conclusion of law--which itself did not cite any
supporting case law or statute--stating that "[a] decree or court order which includes a
provision for the payment of alimony, even contractual alimony, suffers from a failure of
consideration if in fact the parties are not and never were married." Even if we were to
adopt this proposition of law--for which we find no persuasive authority--our 2004 opinion
compels the conclusion that contractual defenses, such as failure of consideration, are now
unavailable to Ventling because the instant proceeding is a collateral attack on the 1995
decree. See Johnson, 132 S.W.3d at 178-79 ("We hold that Ventling's challenge to the
enforceability of the decree in this proceeding amounted to an impermissible collateral
attack."); Birdwell, 819 S.W.2d at 226-27 ("[I]n suits to enforce agreed judgments, parties
may not raise contractual defenses because such defenses constitute impermissible
collateral attacks on the prior judgments."). We note also that the now-stipulated lack of
a "marital estate" has no bearing on the issue of contractual alimony, which, if awarded,
is not part of the "just and right" division of the marital estate in a divorce proceeding.

 Moreover, the fact that both parties now claim that they were never married is
immaterial. Ventling's original petition for divorce asserted that the parties "have a
common law marriage" and the final decree dissolved that purported marriage under terms
consented to by both parties with advice of counsel. Both parties signed the final decree,
acknowledging that they "approved and consented to" the terms "as to both form and
substance." Neither party appealed the decree, which was a final divorce judgment. 
Johnson, 132 S.W.3d at 178, 179. Regardless of whether the parties now deny that they
were ever married, the 1995 decree clearly implied that they were and that a common-law
marriage was the "relationship" between them that was being terminated. (9)

 Just as the trial court in 2001 lacked the plenary power to vacate the 1995 decree,
the trial court in 2009 was without the authority to refuse to enforce the decree's alimony
provisions based on Ventling's contractual defenses. However, as noted, a final judgment
may be attacked in a collateral proceeding if it is shown that the consent given to the
judgment was the result of extrinsic fraud, (10) accident, or mutual mistake of fact. See
Schwartz, 247 S.W.3d at 804 (citing Boyd, 545 S.W.2d at 523). Ventling has continuously,
since his original motion to vacate in 1997, pleaded fraud and other affirmative defenses
in his attempt to avoid the alimony obligations, but at no point in the last thirteen years has
the trial court explicitly ruled on the veracity of those pleadings. 

 We conclude that the trial court's denial of Johnson's motion to enforce the
contractual alimony provisions in the 1995 decree, without reaching a conclusion as to
Ventling's allegations of extrinsic fraud, accident, or mutual mistake of fact, was erroneous
as a matter of law. See Villagomez, 210 S.W.3d at 728. Johnson's issues are therefore
sustained in part. On remand, the trial court is instructed to determine, based on all the
evidence, whether Johnson fraudulently induced Ventling to agree to the terms of the 1995
decree, or whether Ventling's affirmative defenses of accident or mutual mistake of fact are
meritorious. If Ventling does not prove one of these affirmative defenses, the trial court
must render judgment against Ventling with respect to this collateral attack on the 1995
decree, with such judgment to include: (1) $142,500 in damages, representing the unpaid
contractual alimony; (2) appropriate prejudgment interest, see Johnson & Higgins of Tex.,
Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 528 (Tex. 1998) (permitting the award of
prejudgment interest based on general principles of equity); (3) reasonable attorney's fees;
and (4) costs of court.

III. Conclusion

 We reverse the judgment of the trial court and remand for further proceedings
consistent with this opinion.


 

 DORI CONTRERAS GARZA

 Justice


Delivered and filed the

15th day of July, 2010.
1. The parties' signatures on the final decree appeared at the conclusion of the document underneath
the following statement: "APPROVED AND CONSENTED TO AS TO BOTH FORM AND SUBSTANCE."
2. Johnson testified that she was receiving military widow's benefits from a prior marriage, and that
those benefits would terminate if she remarried.
3. After the July 25, 2001 judgment, the trial court entered the following findings of fact:


Nowhere in the order of April 13, 1995, or any other order, judgment, or decree before or
since, did the Trial Court find the parties to be married. In fact, subsequently, by judicial
stipulation and finding by the Trial Court, it was resolved that [the parties] were not and had
never been married. In the absence of a marriage, there was no community property estate,
or existence of a spousal relationship . . .


The Trial Court and [Ventling] were of the opinion and conclusion on April 13, 1995, that the
purpose of that hearing was granting unto the parties a divorce, and terminating their marital
status. The Court and [Ventling] would not discover until after April 13, 1995, that [Johnson]
denied the existence of a marriage relationship . . .


The court further pronounced the following conclusions of law:


A decree or court order which includes a provision for the payment of alimony, even
contractual alimony, suffers from a failure of consideration if in fact the parties are not and
were never married . . .


A money judgment to equalize, or made incident to effecting a just and right division of
community property, is a legal nullity and a legal fiction, when in fact the parties were never
married and thus, as a matter of law, there can be no community property estate. A
judgment upon such grounds fails for want of consideration.
4. The June 16, 2009 judgment was at least the third final judgment rendered by the trial court in this
case. After a hearing on January 16, 2009, the trial court rendered its original judgment on March 11, 2009
granting Johnson's motion for enforcement and awarding to Johnson: (1) $306,375, representing the
outstanding alimony balance and accrued interest; (2) $61,121.20, representing damages for adverse tax
consequences and accrued interest; (3) $60,863.46, representing the lump sum property settlement payment
and accrued interest; and (4) $76,620.38 in attorney's fees, $9,070.23 in court costs, $7,500 in attorney's fees
in the event of an appeal to this court and $5,000 in attorney's fees in the event of an appeal to the Texas
Supreme Court. On April 13, 2009, the trial court rendered an amended final judgment (1) omitting the
interest on the outstanding alimony, (2) omitting the damages for adverse tax consequences, and (3) awarding
a reduced amount of attorney's fees. Finally, after a second hearing on June 9, 2009, the trial court vacated
the two previous judgments and rendered its judgment denying Johnson's motion for enforcement in its
entirety.
5. Ventling moved this Court to dismiss the appeal for want of jurisdiction, contending that Johnson's
notice of appeal was untimely. See Tex. R. App. P. 26.1 (stating that a notice of appeal must be filed within
30 days after the judgment is signed, or within 90 days after the judgment is signed if any party timely files a
motion to modify the judgment). Johnson filed her notice of appeal on September 14, 2009, which was ninety
days after the judgment was signed. According to Johnson, the notice was timely because she had filed a
motion to vacate the judgment on July 21, 2009, thereby extending the deadline for filing a notice of appeal. 
See id. Ventling argued that Johnson's motion to vacate was itself untimely and that it therefore did not serve
to extend the deadline. See Tex. R. Civ. P. 329b(g) (stating that a motion to modify a judgment must be filed
within thirty days after the judgment is signed). However, although Johnson's motion to vacate was file
stamped by the District Clerk as having been received on July 21, 2009--more than thirty days after the
judgment was signed--the motion was actually mailed by Johnson to the trial court manager on July 15, 2009. 
We denied Ventling's motion to dismiss the appeal because Johnson's motion to vacate, having been mailed
to the trial court manager within thirty days following the signing of the judgment, was sufficient under the
applicable rules to extend the deadline for filing a notice of appeal. See Tex. R. Civ. P. 5 ("If any document
is sent to the proper clerk . . . and is deposited in the mail on or before the last day for filing same, the same,
if received by the clerk not more than ten days tardily, shall be filed by the clerk and be deemed timely filed.");
Stokes v. Aberdeen Ins. Co., 917 S.W.2d 267, 268 (Tex. 1996) ("For purposes of determining whether a party
files a document timely (thereby establishing appellate deadlines), we hold that mailing the document to the
proper court address is conditionally effective as mailing it to the proper court clerk's address." (Emphasis in
original)).
6. Johnson does not challenge the trial court's judgment as it relates to the lump sum property
settlement payment or the damages for adverse tax consequences as provided in the 1995 decree.
7. In his brief on appeal, Ventling notes correctly that "[f]indings of fact in a case tried to the court have
the same force and dignity as a jury's verdict upon questions." Anderson v. City of Seven Points, 806 S.W.2d
791, 794 (Tex. 1991); Valley Diagnostic Clinic, P.A. v. Dougherty, 287 S.W.3d 151, 155 (Tex. App.-Corpus
Christi 2009, no pet.). However, only the trial court's conclusions of law--not its findings of fact--are in
dispute here.
8. The Texas Family Code explicitly allows parties to a divorce proceeding to enter into a written
agreement concerning spousal maintenance. See Tex. Fam. Code Ann. § 7.006(a) (Vernon 2006). Under
that statute, if the court finds that the terms of such a written agreement are "just and right," those terms then
become binding on the court. Id. § 7.006(b). The decree at issue here does not explicitly state whether the
trial court found the terms of the parties' alimony agreement to be "just and right"; however, the trial court's
signature on the decree strongly indicates that it approved of the terms contained therein.
9. Ventling notes that the section 71 Internal Revenue Code defines "alimony" as "payment . . .
received by (or on behalf of) a spouse . . . ." 26 U.S.C. § 71(b)(1)(A) (emphasis added). Ventling argues that,
because he and Johnson were never married, and because the contractual alimony provisions contained in
the 1995 decree specifically referenced this statute, the contract is unenforceable. The trial court appears
to have adopted this reasoning in its conclusions of law. However, Internal Revenue Code section 71
specifically provides that it its definitions are applicable only to that section. See id. § 71(b). Moreover, the
issue of whether the payments are properly characterized as "alimony" for the purposes of federal tax law is
irrelevant to the issue we consider here; that is, whether the terms of the 1995 decree are enforceable.
10. Extrinsic fraud is defined as "fraud that denies a losing party the opportunity to fully litigate at trial
all the rights or defenses that could have been asserted." Browning v. Prostok, 165 S.W.3d 336, 347 (Tex.
2005) (citing Montgomery v. Kennedy, 669 S.W.2d 309, 312 (Tex. 1984)). It generally includes wrongful
conduct occurring outside of the adversarial proceedings. Id. (citing Alexander v. Hagedorn, 148 Tex. 565,
575, 226 S.W.2d 996, 1002 (1950)). The fraud must be collateral to the matter tried and not something which
was actually or potentially in issue. Id. (citing Montgomery, 669 S.W.2d at 312). By contrast, intrinsic fraud,
which may not form the basis of a collateral attack, "relates to the merits of the issues [that] were presented
and presumably were or should have been settled in the former action." Id. at 347-48 (citing Tice v.
Pasadena, 767 S.W.2d 700, 702 (Tex. 1989)). Here, Ventling alleged in his response to Johnson's 1997
motion for enforcement that the alimony agreement "was the result of fraud, accident, mistake, and other
improper motives of Patricia M. Johnson." These affirmative defenses are based on conduct by Johnson
alleged to have occurred outside of the adversarial proceedings, and could not have been settled prior to entry
of the 1995 decree. See id. at 347 (citing Alexander, 148 Tex. at 575, 226 S.W.2d at 1002); id. at 347-48
(citing Tice, 767 S.W.2d at 702). Accordingly, these defenses, if proven, would sustain Ventling's attack on
the 1995 decree.